[No. 4122.   Decided September 26, 1902.]

J. EUGENE JORDAN, *Respondent,* v. A. D. COULTER *et al.,
Appellants.*

PLEADINGS — ACTION ON WRITTEN CONTRACT — PRIOR NEGOTIATIONS
    —IRRELEVANCY.

Paragraphs of a pleading containing averments relating to
certain alleged oral conversations and agreements between the

parties to an action were properly stricken as immaterial, where the pleading itself set up a written agreement subsequently entered into concerning the same subject-matter as the alleged previous oral agreement.

FINDINGS OF COURT — SUFFICIENCY OF EVIDENCE.

Where the testimony is conflicting and the preponderance is not clearly against the findings of the trial court, the supreme court will not interfere on appeal.

SPECIFIC PERFORMANCE — UNPERFORMED CONDITIONS. ·

Specific performance of a contract will not be enforced where any of its conditions remain unperformed on the part of the one asking enforcement.

CANCELLATION OF INSTRUMENT — EQUITABLE JURISDICTION.

Where defendant set up a contract and asked its specific performance, by way of cross complaint to an action against him for conversion, the court is warranted in decreeing a cancellation of the contract when it appears to be nonenforceable, although plaintiff did not ask for such relief, under the rule that, when equitable jurisdiction attaches for any purpose, it extends to the whole controversy.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*Ballinger, Ronald & Battle* and *Humes, Miller & Lysons,* for appellants.

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondent against appellants to recover the value of 325 ounces of gold dust, alleged to be of the value of $5,000. It is alleged that the gold dust was received by appellants for safe keeping, to be delivered to respondent, and ' that appellants so promised to deliver it, but have failed and refused to do so, and have converted the whole of it to their own use. Appellants deny the allegations of the complaint, and further allege by way of cross-complaint,

among other things, substantially as follows: That on the 28th day of May, 1900, the respondent and appellant A. D. Coulter entered into the following written agreement, towit:

"This contract made and entered into by and between J. Eugene Jordan, party of the first part, and A. D. Coulter, party of the second part, witnesseth:

"The party of the first part agrees to transfer to the party of the second part one undivided half interest of his (party of the first part) interest in claim No. 2 and 3, namely, Grouse and Snipe, on Elkhorn Creek District, Territory of Alaska, that is to say, one-fourth interest in said claim upon the following terms, towit:

"The party of the second part agrees to assume one-half the obligations entered into by the party of the first part with Mr. C. D. Campbell, for the purchase of the said property on Elkhorn Creek.

"The party of the second part also agrees, free of cost to first party, to erect a proper sluicing outfit on said above mentioned claims and to do the assessment work thereon this season.

"The party of the second part also agrees to do assessment work of claim No. (27) twenty-seven, Gold Bottom Creek, Eldorado District, and Claim one above Jones Creek, entering the Salmon Bonanza District, and should claim (27) twenty-seven, Gold Bottom Creek, have been forfeited by noncompliance with the law of last January, that is, should it have been filed on at that time legally, which should be ascertained by party of the second part from the records, in that event party of the second part shall do the assessment work on Claim No. One, above on Jones Creek, and Claim No. One, below on Boston Creek, emptying into Shovel, both in Bonanza District, Alaska, and as time is the essence of this contract party of the second part agrees to have the assessments finished by the middle of July, 1900."

It is alleged that appellant A. D. Coulter has performed all the terms and conditions of said contract on his part

to be performed, as far as the same relates to said claims on Elkhorn creek, and that he tendered performance as far as it relates to the claims on Jones creek and Boston creek, and was ready and willing to so perform, but was prevented from so doing by the acts of the respondent in that respondent procured others to do the assessment work upon said claims which said appellant was by said contract required to do; that said appellant, for himself and respondent, in connection with the owners of the other undivided half of said claims on Elkhorn creek, did a large amount of development work and mining on said claims over and above the amount required for assessment work thereon; that in doing said work and mining certain gold dust was extracted, and certain expenses were incurred in the extraction thereof; that the amount of one-half of the gold dust so extracted was 587 ounces, and one-half of the expenses incurred amounted to $9,269.13; that said appellant has paid all of said expenses except the sum of $1,255, which remains unpaid; that there now remains of said gold dust 109 ounces, of the value of $1,744; that there is still due on the purchase price of the one-half interest in said claims the sum of $800, and that said appellant has offered to settle with respondent, and to account for said sums, after deducting the said amount of purchase money and other unpaid expenses as aforesaid; that respondent refused, and still refuses, to settle with said appellant upon any terms, and denies said appellant's right to any part of said gold dust, and refuses to make conveyance to said appellant of any interest in said claims. The answer prays that the court may ascertain the true status of the accounts between respondent and appellant A. D. Coulter, and also for a decree compelling respondent to specifically perform said written contract by making a conveyance to said

appellant of an undivided one-fourth interest in and to said claims on Elkhorn creek. The reply generally denies the material averments of the answer except the averments that the gold dust extracted was taken from said Elkhorn creek claims, and also that respondent refuses to convey an undivided one-fourth interest in said claims to either of the appellants. The cause was tried by the court without a jury, and resulted in a judgment that respondent shall recover from appellants, and each of them, the sum of $1,807.04 and costs, and also that the aforesaid written contract shall be canceled because of the failure of the appellant A. D. Coulter to comply with certain of the covenants on his part to be performed. From said judgment this appeal was taken.

It is assigned that the court erred in granting respondent's motion to strike certain paragraphs of the answer and cross-complaint. No reference is made to the subject-matter of those paragraphs in the foregoing statement of the issues, for the reason that they formed no part of the issues under which the cause was finally tried. The paragraphs stricken contain averments relating to certain alleged oral conversations and agreements between respondent and appellant A. D. Coulter prior to the time of the execution of the written agreement above quoted. Whatever those conversations or agreements may have been, it nevertheless follows, under the well-known rule that all previous agreements concerning the subject-matter of a written agreement are presumed to be merged in the written agreement, that such must be the case here. The written agreement is not only admitted by appellants but is first introduced into the record by them in their answer. To that agreement alone we must refer in order to determine the status of the parties with relation to the subject matter of the contract. The paragraphs were

stricken on the ground that they contained redundant and immaterial matter. We think the view of the trial court was right, and that no error was committed in that particular.

It is assigned that the court erred in finding that respondent was the owner of an undivided half interest in the claims on Elkhorn creek, it being contended by appellants that Campbell, the grantor of respondent's interest in the claims, owned no more than a one-fourth interest therein when he conveyed to respondent. It is claimed that one Mrs. Reynolds was the owner of a one-fourth interest which was not conveyed. It appears from certain evidence that this Mrs. Reynolds was known as the wife of Campbell, and seems to have been called by both the names of Campbell and Reynolds. It is admitted in appellants' brief that appellant A. D. Coulter stated that Campbell did own a half interest, and it is also admitted that it was so alleged in the answer; but it is urged that such is not the fact, and that appellants should not be bound by those admissions. The witness Gardner testified that he bought a half interest in the claims, and that Campbell bought the other half, the transfer being made to the two by one instrument. Gardner says he had a side partner, one Dailey, but that the transfer of the half interest was made to him alone, and the other half to Campbell. Both respondent and the witness Steele testified that appellant A. D. Coulter admitted in their presence that the gold dust which appellants had received and which came from said claims, was the property of respondent; and the witness Gardner testified to a similar admission made by the appellants in Alaska; and appellant A. D. Coulter admitted on the witness stand that in a conversation with respondent in the presence of the witness Steele he had agreed to pay over to respondent

the gold dust which appellants had. In opposition to the above the appellant A. D. Coulter testified concerning an alleged conversation he says he had with respondent upon his return from Alaska, in which he says he stated to the respondent that he discovered from the records at Council City, Alaska, that the title to one-half of the property did not stand in Campbell. This conversation respondent denies. Said appellant also stated in his testimony, over objection, aside from his detailment of said alleged conversation, that he found from the records in Alaska that Campbell did not hold title to one-half of the claims. There was no record or documentary evidence introduced to show that any portion of the half interest was vested in any other person than Campbell at the time of the transfer to respondent. Under these circumstances we will not disturb the court's finding that respondent was the owner of an undivided half of the Elkhorn creek claims at the date of making the written contract above mentioned.

It is next assigned that the court erred in finding that appellant A. D. Coulter failed to perform the obligations of said written agreement between himself and respondent, in that he did not do the assessment work required by the last paragraph of the contract to be done upon the Jones creek and Boston creek claims, and also that respondent did not prevent him from so doing. It is admitted that said assessment work was not done by said appellant, but he urges the excuse that respondent prevented him from doing it by procuring others to do it. The contract provided that said work should be done by the middle of July, 1900. Respondent employed other persons to proceed to Alaska and do the assessment work upon a large number of other claims in which he was interested, with instructions that, if said appellant had

not done the work upon the Jones and Boston creek claims by the 1st of August, 1900, then they were to do it. These parties went upon the latter mentioned claims and did some work before the middle of July, but did not leave them until after the middle of said month. Meantime said appellant had done no work upon the claims. He says he employed a party to proceed to the claims, and do the work within the contract time, and that such party found the work had been done, and left without doing anything. One of respondent's employees, who did some work upon the claims, testified that the work done was more in the nature of prospecting than of assessment work, and that the amount done in any event was not sufficient to cover the necessary assessment work. Under any view of the evidence said appellant Coulter was not prevented from going upon the claims and doing the amount of work required by his contract, and, since he failed to do any work whatever, we think the finding of the court was correct.

It is assigned that the court erred in refusing to find that appellant A. D. Coulter, immediately after the execution of said contract, left for Alaska to perform the terms thereof, and that respondent then said to him that he hoped he would mine and take out of said Elkhorn creek claims at least $100,000 during the season of 1900. Respondent denies that he made any such statement, and we are not in position to say that the court erred in refusing to make the finding, since the only testimony upon that subject was that of appellant A. D. Coulter and respondent. The court heard these men testify and is better able to determine the weight to be attached to their testimony than is this court, with only the record before it.

It is also urged that the court should have found that

appellant Charles Coulter received no part of the gold dust, and also that appellant A. D. Coulter incurred an expense necessary for the extraction of the gold dust, amounting to $1,626, and further, that the court erred in not permitting appellants to prove expenditures in said amount. The testimony shows that mining was done on the Elkhorn creek claims during that season by men who took what were called "lays," they agreeing to pay the owners of the claims a royalty of twenty-five per cent. of the gross amount of gold taken from the claims. The testimony of appellant Charles Coulter showed that appellants received $1,862.04 as one-half the total amount of such royalty, the other half having been received by the witness Gardner, who represented a one-half interest in the claims. The amount received by appellants represented the royalty belonging to respondent's half interest in the property. We think it sufficiently clear that both appellants received this royalty, as they were acting together. They together kept books of account concerning it. There was some testimony to the effect that they received more than the amount stated, but the court accepted the amounts disclosed by the books, from which appellant Charles Coulter was permitted to refresh his memory for the purpose of testifying. The court allowed them the expenses incurred for the purpose of evicting certain jumpers from the claims. They, however, claim they should have been allowed the aforesaid sum of $1,626 as expenses incurred in mining. Appellants worked upon the claims under the lay arrangement known as the "McNeil lay." They had one other man working with them as one of their party. The seventy-five per cent. taken under the McNeil lay was divided between appellants' party and the McNeil party. Appellants sought to prove that they were put to an expense of $1,626 in

mining said gold, which in part consisted of wages for themselves and their associate, and further sought to offset this expense against the royalty which they received from other miners. The contract with respondent gave appellants no authority to incur expenses in mining these claims. The contract, as far as these claims were concerned, simply required A. D. Coulter to build a sluicing outfit and do the assessment work upon the claims. But all that was to be done as a part of the purchase price for a half of respondent's interest. Since they were not authorized to mine the claims, they did the mining without authorization or employment. They assumed to work under a lay, as other miners worked. Other miners assumed all risk of expenses of mining, taking for themselves seventy-five per cent. of the gross output extracted by them, and yielding absolutely to the owners the remaining twenty-five per cent. The owners were chargeable with no expenses attached to the mining. The court did not, as we understand it, however, hold appellants for the gold extracted by themselves, on the theory, no doubt, that there was evidence tending to show that the expense of extracting it exceeded the amount taken out. They were held only for the amount of royalty received from other miners. We think the court did not err in the particulars last discussed.

We have discussed somewhat at length the evidence under the various assignments as to the court's findings and as to its refusal to make findings, in order that it may be seen how the record here appears, as we understand it. There is conflicting testimony, but we think there is no such preponderance of evidence against the findings as would authorize this court to interfere with them. The error assigned upon the conclusion of law that respondent is entitled to recover the amount of the judgment

has already been sufficiently discussed, since the conclusion follows from the facts found. But it is further assigned that the court erred in the following conclusion of law, and in entering judgment accordingly, towit:

"That the defendant A. D. Coulter is not entitled to a decree as prayed, for a specific performance of said written contract; and is not entitled to a conveyance from the plaintiff of any interest whatsoever in or to the mining claims hereinbefore described; but said written contract, on account of failure of the performance thereof on the part of the said A. D. Coulter is, and should be held to be, at an end and canceled."

We find no error in the above. One of the conditions of the written contract was that the assessment work should be done upon the Jones and Boston creek claims by the middle of July, 1900. The work was not done within the time, or at all. It therefore follows that said appellant is not entitled to a specific performance of the contract by a conveyance to him.

But it is further urged that, since respondent did not, in his pleadings, ask for relief by way of cancellation of the contract, it was error on the part of the court to cancel the same. If said appellant is not entitled to specific performance of the contract, then it would appear that he has no further rights thereunder, since time was made of the essence of the contract. Therefore, under the well known rule that, when the jurisdiction of a court of equity attaches for any purpose, it extends to the whole controversy, we think it was competent for the court to declare the contract at an end. 1 Beach on Modern Equity Jurisprudence, § 21; Bispham, Principles of Equity (6th ed.), § 37.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, WHITE, ANDERS and MOUNT, JJ., concur.