[No. 31911.   *En Banc.*   July 17, 1952.]

RUDD O. HUBBELL *et al., Respondents,* v. H. G. WARD,
*Appellant.*[1]

[1]Reported in 246 P. (2d) 468.

J. *Lael Simmons* and *Leslie M. Yates*, for appellant.

*Ralph Purvis* and *James B. Sanchez*, for respondents.

DONWORTH, J.—Plaintiffs instituted this action asking that defendant be compelled to perform specifically the terms of a certain earnest-money receipt and agreement for purchase and sale of an apartment house in Bremerton and personal property situated therein. Plaintiffs are the purchasers named in the agreement, and defendant, who owns the premises as his separate property, is the seller. At the time plaintiffs signed the agreement, they delivered to the realtor with whom the property had been listed for sale, their check for five hundred dollars earnest money. Defendant later refused to carry out the terms of this agreement, giving as his reason that to do so would result in breaking up his home.

The earnest-money receipt and agreement (designated in the record as exhibit A and hereinafter referred to as the agreement) contains the following provision:

"Total purchase price is TWENTY-NINE THOUSAND AND No/100 DOLLARS ($29,000.00), payable as follows: On evidence of merchantable title purchaser agrees to pay Nine Thousand ($9,000.00) Dollars down *and sign a contract for the balance*, payable at $200.00 or more per month, including interest at the rate of 5% on deferred balances.

"Purchase price is to include all furniture in rentals, excluding owner's apartment, also to include necessary tools and equipment, furnace parts and insulation to maintain premises. Owner shall furnish complete inventory of furnishings for buyer's inspection and approval before closing of sale." (Italics ours.)

A trial was had before the court sitting without a jury, the principal issue of fact being whether defendant had signed the agreement in the form in which it was offered in evidence by plaintiffs. The trial court found in favor of plaintiffs on this issue and entered a decree of specific performance directing defendant "to enter into a real estate

contract according to the terms of said earnest money receipt and agreement." Defendant has appealed from this decree.

Appellant makes three assignments of error as follows:

"1. The trial court erred in finding that appellant ever agreed to the terms of Exhibit 'A'.

"2. The trial court erred in concluding that there was sufficient evidence in law to support a judgment of specific performance.

"3. The trial court erred in rendering judgment against appellant."

In support of his first assignment, appellant makes the statement that, this being a case of equitable cognizance, it will be tried *de novo* on appeal. This is no longer the rule. Since the adoption of Rule on Appeal 43 (34A Wn. (2d) 47), effective January 2, 1951, there has been no distinction between our method of reviewing the record in equity cases and in law cases. To emphasize this change, Rule 43 has recently been amended (34A Wn. (2d) Sup.).

Since appellant's first assignment does not refer by number and description to any particular finding which he is attacking, as required by Rule 43, *supra*, we shall accept the trial court's findings as the established facts in the case. *Lopeman v. Gee, ante* p. 586, 245 P. (2d) 183, and cases cited therein. We must, therefore, accept the finding that appellant agreed to the terms of the agreement (exhibit A).

The second and third assignments, which can be considered together, raise the question (which was inherent in the case) whether the agreement is a contract which a court of equity will specifically enforce.

Appellant, in answering this question in the negative, makes two principal contentions:

First, that the agreement is too indefinite in its terms to permit of being specifically enforced;

Second, that, being an agreement to enter into a future contract, it is nugatory because all of the terms of the future contract are not set forth.

On the other hand, respondents argue that the agreement is sufficiently definite in its terms and that the parties agreed

therein to sign a contract for the balance due ($20,000 payable at $200 or more per month including five per cent interest) in "the standard and usual real estate purchase contract" form.

█ We are unable to determine that there is any standard form of such contract or, if there be such, what its provisions are. Real-estate purchase contracts differ in their provisions depending upon the nature of the property involved and the individual requirements of the parties thereto. They are not standardized as to their provisions any more than leases are. This court has held that an agreement to execute a lease cannot be specifically enforced unless the agreement definitely states the terms of the lease. *Keys v. Klitten*, 21 Wn. (2d) 504, 151 P. (2d) 989, and cases cited therein.

The agreement here involved, as interpreted by the parties themselves, contemplated that a real-estate purchase contract which would contain new and additional terms might be executed in the future. It appears that there had. been no understanding between the parties as to what these additional terms should be. The trial court directed appellant "to enter into a real estate contract according to the terms of said earnest money receipt and agreement." Neither the agreement nor the court's decree of specific performance affords appellant any information as to what provisions the proposed real-estate contract shall contain relative to these important matters:

1. No provision is made as to the time for the transfer of title to the personal property or as to the manner of passing title thereto.

2. After the purchaser is given possession of the premises (which is to be within thirty days after closing the transaction), in what manner, if any, may the seller declare a forfeiture of the proposed real-estate contract in the event of default by the purchaser in his performance thereof? In such event, may the seller retain all payments theretofore received as liquidated damages for the breach?

3. Which party bears the loss if the building, or the contents, is damaged or destroyed by fire or other casualty?

4. What kinds of risks are to be insured against while the contract is in effect? What are the limits of the policies? Who pays the premiums? Who is to be designated as the insured therein and who holds the policies?

5. Who pays the taxes and assessments levied on the property?

6. Who is responsible for keeping the building in repair?

7. Who pays the water or other utility charges?

8. May the purchaser make capital improvements without the consent of the seller?

9. What protection, if any, is the seller to have against mechanic and materialmen's liens created by the purchaser?

10. Is the purchaser permitted to remove any furniture or other personal property from the apartment house or replace worn out pieces without the seller's permission?

11. May the purchaser use the premises for any other purpose than operating an apartment house?

12. When and where are the monthly payments to be made by the purchaser?

13. Is the purchaser to indemnify the seller against claims of third persons for personal injuries and property damage arising because of accidents occurring on the premises?

The foregoing are matters material to the rights and obligations of both parties. The seller is giving up possession and control of the premises and furniture for possibly eleven years, during which time it is important to him that his property be protected by having the obligations and duties of the purchaser with respect to it definitely defined. It is equally important to the purchaser that his property rights be protected and his duties clearly defined.

Respondents have not indicated in their brief whether the "usual and standard" real-estate purchase contract includes any provisions relative to the matters mentioned above. They argue that it is not necessary for the earnest-money agreement to contain a forfeiture clause, a designa-

tion of the place of payment, any provision as to who shall bear the risk of loss during the life of the contract, or any provision relative to fire insurance. It may be true that such matters are not ordinarily provided for in an earnest-money agreement, but respondents recognize that the contemplated real-estate contract is to contain some new and additional provisions not mentioned in the agreement.

In *Keys v. Klitten, supra,* the parties agreed in an earnest-money receipt to enter into a "proper lease" of certain hotel property. In holding that specific performance of the agreement should be denied, because the terms of the lease contemplated by the earnest-money receipt were too indefinite, we said:

"What would be a *proper* lease? It must, we think, be admitted that an answer to the question might depend upon many circumstances and conditions; in other words, *proper* is not a word which does or could indicate the particular terms and conditions which were to be incorporated into the lease to be prepared; at least in the absence of testimony as to the meaning of the term *proper lease.* Neither would it seem that the term *proper lease* meant a lease in accordance with the terms and conditions of the receipt, for had that been the intent of the parties, it would have been easy to say that a lease should be prepared which would embody the terms of the earnest money receipt, as was done in the case of *Omak Realty Inv. Co. v. Dewey,* 129 Wash. 385, 225 Pac. 236. . . .

"It is apparent to us from the testimony that it was not intended by the earnest money receipt to fix the terms and conditions of the lease, and it is just as apparent that the parties are unable to agree on the terms and conditions of such lease. In order, then, specifically to enforce this earnest money receipt, it would first be necessary for us to determine what terms and conditions should be included in a proper lease. To do this would, in our opinion, be writing a lease, the terms and conditions of which were not covered by the earnest money receipt, and upon which the minds of the parties had never met. This, a court of equity will not do.

"To paraphrase a statement found in *Weldon v. Degan,* 86 Wash. 442, 446, 150 Pac. 1184, the earnest money receipt is no more than an agreement for a lease, or, in other words, an agreement to do something which requires a further

meeting of the minds of the parties and without which it would not be complete, and to which either of the parties might object if proposed. A contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations. 6 R. C. L., p. 617, § 38. In order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance. The indefiniteness of an agreement is an adequate reason for refusal to direct specific performance thereof. The contract itself must make the precise act which is to be done clearly ascertainable. 49 Am. Jur. 34, § 22.

"In *Thompson v. Weimer*, 1 Wn. (2d) 145, 95 P. (2d) 772, we quoted with approval from 25 R. C. L. 218, Specific Performance, § 17:

" ' "One of the fundamental rules respecting the specific performance of contracts is that performance will not be decreed where the contract is not certain in its terms. The terms must be complete and free from doubt or ambiguity, and must make the precise act which is to be done clearly ascertainable." '

"While in the instant case it is true that the earnest money receipt contains some of the terms of a proposed lease, the receipt clearly contemplates that the term of the lease shall not begin to run, nor shall appellant have possession of the premises, until a *proper* lease has been executed. It is plain to us that what the terms of this proper lease were to be was something which was to be later agreed upon by the parties. The parties have been unable to agree, and we are of the opinion the term *proper lease* is so indefinite that this court cannot compel specific performance of the contract, because it cannot tell, and should not attempt to say, what the parties meant by a *proper lease*.

"An agreement to enter into a lease should not be enforced if any of the terms of the lease are left open to future settlement. Until the minds of the parties have met on all material matters, a court should not direct specific performance. *Dan Cohen Realty Co. v. National Sav. & Trust Co.*, 125 F. (2d) 288, 289. See, also, Bennett, Laws of Landlord and Tenant, pp. 514-515, § 362; *Woods v. Matthews*, 224 Mass. 577, 113 N. E. 201."

In the present case, all that the agreement provides as to terms of the contemplated real-estate contract is: "sign a

contract for the balance [$20,000], payable at $200 or more per month, including interest" at the specified rate. No more information as to terms of the proposed real-estate purchase contract appears here than was given in the *Keys* case regarding the terms of the "proper lease."

Because of certain language used in *Bloom v. Christensen*, 18 Wn. (2d) 137, 138 P. (2d) 655 (a decision not referred to by either party), we wish to consider that case. It was an action by a broker to recover his commission pursuant to a listing agreement. He procured a buyer, who signed an earnest-money agreement to purchase an apartment house upon certain terms. The agreement provided that the balance of the down payment was to be paid "at signing of contract" and the remainder of the consideration was to be paid at the rate of seventy-five dollars per month including interest.

In holding that the broker had earned his commission when he obtained the buyer's signature to the earnest-money agreement, this court said:

"The earnest money agreement was a valid contract *enforcible by a suit for specific performance*, and was not in any sense an option to purchase. *Newell v. Lamping*, 45 Wash. 304, 88 Pac. 195; *Asia Inv. Co. v. Levin*, 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578; *Hamilton v. Norris*, 144 Wash. 326, 258 Pac. 4." (Italics ours.)

The italicized portion of the foregoing quotation was not necessary to establish the broker's right to recover his commission. He produced a buyer who was ready, able, and willing to purchase the property upon the terms specified by the seller in the listing agreement. Under the terms of the listing agreement and the seller's acceptance of the earnest-money agreement, he was entitled to his commission. Whether he obtained the buyer's signature to an earnest-money agreement which was susceptible of specific performance was immaterial. We think that the *Bloom* case involved an entirely different issue from that presented in this case and is distinguishable for that reason as well. Consequently, the language quoted therefrom is not applicable here.

We conclude that the agreement here, in so far as it looks to the preparation and execution of a future real-estate purchase contract upon which the minds of the parties have not met, is not sufficiently definite and certain and cannot be specifically enforced.

The question remains: Are respondents then entitled to any relief at the hands of a court of equity?

An answer to this question necessarily entails examination of appellant's argument that the agreement is wholly nugatory in that it was not intended to create immediate legal rights and duties.

The agreement contains within itself the essential elements of a binding contract for the purchase and sale of the real and personal property described therein. Respondents are given an option to pay the entire consideration at any time. The subject matter of the agreement, the consideration and terms of payment, are all set forth, and it is evident from a consideration of all the terms of the agreement that it was not intended merely as a preliminary negotiation. It was intended as, and is, a valid contract, enforcible except in so far as it involves the making of a future contract.

While the complaint contained no prayer for general relief, a decree directing conveyance upon condition that the purchase price be tendered in full is consistent with, and within the scope of, respondents' prayer that the agreement "be specifically enforced against the defendant." When equity assumes jurisdiction over the subject matter of an action and the parties to be affected by its decree, it will retain jurisdiction for all purposes. Jurisdiction having attached, it extends to the whole controversy, and whatever relief the facts warrant will be granted. *Jordan v. Coulter*, 30 Wash. 116, 70 Pac. 257; *Davies v. Cheadle*, 31 Wash. 168, 71 Pac. 728; *Phillips v. Blaser*, 13 Wn. (2d) 439, 125 P. (2d) 291; *In re Schnoor's Estate*, 31 Wn. (2d) 565, 198 P. (2d) 184.

Equity having taken jurisdiction of the controversy, we are of the opinion that respondents are entitled to a

decree of specific performance directing appellant to execute and deliver a deed and bill of sale conditioned upon respondents' tendering payment of the balance of the full contract price of $29,000 within a reasonable period of time.

In directing the entry of the decree hereinafter described, we are not thrusting upon the parties a new contract. Appellant and respondents, by executing the earnest-money agreement, bound themselves, respectively, to pay and accept $9,000 down and the balance ($20,000) in installments of $200 *or more* per month, including interest. Thus respondents were given an option to pay the balance of the consideration in cash at any time. By agreeing to accept payment of the purchase price of $29,000 in either manner, appellant entered into a contract of sale which, in its optional aspect, is susceptible of specific enforcement. A decree permitting respondents to exercise their option to pay in full will afford them a reasonable opportunity to obtain the benefits of the bargain to which they are entitled and, at the same time, will compel appellant to accept the accelerated payments to which he has agreed. See Restatement, Contracts, 683, § 370, comments and illustrations thereunder.

The cause is, therefore, remanded to the trial court with instructions to modify the judgment upon the going down of the remittitur by eliminating therefrom the paragraph thereof beginning "Now, therefore, it is hereby ordered, adjudged and decreed . . ." and by inserting in lieu thereof the following:

"Now, therefore, it is hereby ordered, adjudged and decreed that, in the event that within thirty days from the date hereof plaintiffs shall pay into the registry of this court the sum of Twenty-eight Thousand Five Hundred Dollars ($28,500), which shall be subject to the further order of the court, and shall notify the defendant in writing of such deposit, then the defendant is hereby directed to carry out and perform all acts necessary to effect a sale of the real and personal property described in plaintiffs' Exhibit A in accordance with the terms thereof in the same manner as though the plaintiffs had elected to pay the entire consid-

eration therefor in cash. The said Exhibit A shall be considered as having been executed on the date on which plaintiffs shall notify defendant of their having made the aforesaid deposit into the registry of this court, and the time for the performance of the various acts required of the parties in Exhibit A shall commence to run from said date. Upon the complete performance by the plaintiffs and the defendant of all acts necessary to consummate said sale, the court shall enter such further order relative to the deposit in the registry of the court as may appear equitable.

"In the event that plaintiffs shall fail within said period of thirty days to make such deposit and notify defendant thereof, this action shall be dismissed with prejudice upon motion of defendant.

"The court hereby retains jurisdiction of this cause for the purpose of making such orders from time to time as the court may deem necessary and proper to make effective and to complete the specific performance of any and all acts required by this decree."

As so modified, the judgment is affirmed.

It is so ordered.

Neither party shall recover costs on this appeal.

ALL CONCUR.