IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JULIE TADLOCK, Personal Representative of the ESTATE OF TERRY L. SMITH, | ) ) ) ) | No. 81895-3-I |
| Respondent, | ) ) | |
| v. | ) ) ) | |
| STEVE HOVANDER and STARLARE HOVANDER, husband and wife, and all others occupying 3591 Lynden-Birch Bay Road (a/k/a 3591 Birch Bay Lynden Road), Custer, Washington 98240, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) | |

VERELLEN, J. — If a tenant defends against a residential unlawful detainer action by arguing that they have the right to possession of the property based upon a purchase and sale agreement, then the unlawful detainer proceeding properly includes a determination whether that agreement provides the tenant the right to possession of the property. And the probate court considering the tenant's complaint seeking specific performance of the purchase and sale agreement does not abuse its discretion by noting the decision from the unlawful detainer proceeding but then conducting an independent analysis.

Here, the lack of a valid legal description in the purchase and sale agreement, coupled with the Hovanders' failure to satisfy the feasibility

contingency, supported the trial court's conclusion that the Hovanders did not have a right to possession based upon a purchase and sale agreement. And because the probate court conducted an independent analysis, it did not abuse its discretion in concluding that specific performance was not warranted.

As the prevailing party on appeal, the Estate is entitled to attorney fees under the lease and the purchase and sale agreement.

Therefore, we affirm.

## FACTS

Terry and Sharon Smith owned commercial agricultural real property in Birch Bay, Washington. On March 8, 2013, the Smiths leased the property to Starlare and Steve Hovander[1] pursuant to a commercial lease agreement.

The lease term began on May 1, 2013, and ended on September 30, 2015. The Hovanders held over and stopped paying rent in December 2017, but they continued to occupy the premises.

In July 2018, the Smiths died. Shortly after, Julie Tadlock was appointed as the personal representative of the Smith Estate.

On September 26, 2019, the Estate posted a 20-day notice to terminate the tenancy. To comply with the 20-day notice, the Hovanders were instructed to surrender the property to the Estate by October 31. On November 27, the Estate

---

[1] We occasionally refer to the Hovanders by their first names for clarity.

filed an unlawful detainer action alleging that the Hovanders failed to "vacate the [p]roperty."[2]

On May 28 and June 1, 2020, the trial court conducted a show cause hearing.[3] At the hearing, the court heard testimony from Julie Tadlock, her mother, the real estate broker Haruichi Bearden, and Starlare Hovander. The Hovanders argued that they were entitled to possession of the property based on a purchase and sale agreement that was executed by the Hovanders and the Smiths in February 2018. The Estate responded by contesting the validity of the purchase and sale agreement.

In July 2020, the court entered findings of fact and conclusions of law. The court focused on four sections of the purchase and sale agreement. Specifically, the court determined that the agreement did not contain an adequate legal description, that the Hovanders failed to comply with the feasibility contingency and the earnest money provision, and that the agreement failed to specify any closing date.

As a result, the court concluded that the purchase and sale agreement was "invalid and unenforceable" and did "not give the Hovanders a right to possess the property."[4] The trial court denied the Hovanders' motion for reconsideration. In

---

[2] Clerk's Papers (CP) at 77-80, 693, finding of fact 7.

[3] The show cause hearing was postponed multiple times due to the Covid-19 pandemic.

[4] CP at 696, conclusion of law 8.

October 2020, the court issued a writ of restitution directing the sheriff to restore possession of the property to the Estate.[5]

While the unlawful detainer action was pending, on May 6, 2020, in the probate of the Estate, the Hovanders filed a petition for specific performance of the purchase and sale agreement. The Hovanders noted a hearing on their petition for May 29, 2020. That August, the court entered an order denying the Hovanders' petition for specific performance.

The Hovanders appeal the order granting the Estate a writ of restitution, the order denying the Hovanders specific performance, and the order awarding the Estate attorney fees and costs.

## ANALYSIS

### I. Unlawful Detainer

The Hovanders argue that in the unlawful detainer action the trial court erred in finding that the purchase and sale agreement was invalid and unenforceable. Specifically, the Hovanders contend that the "factual and legal bases for [the trial court's] ruling [were] insufficient."[6] We disagree.

We review a "trial court's decision following a bench trial by asking whether substantial evidence supports the findings and whether the findings support the

---

[5] The trial court postponed issuance of the writ of restitution until "on or after December 10, 2020" due to the Covid-19 pandemic. CP at 739.

[6] Appellant's Br. at 4.

4

court's conclusions of law."[7]  Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the finding.[8]  We consider unchallenged findings verities on appeal.[9]  We review mixed questions of law and fact and pure questions of law de novo.[10]

"An unlawful detainer action under RCW 59.12.030 is a summary proceeding designed to facilitate the recovery of possession of leased property; the primary issue for the trial court to resolve is the 'right to possession' as between a landlord and a tenant."[11]  After filing for unlawful detainer, a landlord seeking possession of the property "must request a writ of restitution and note the request for a show cause hearing."[12]

"To obtain a writ of restitution at a show cause hearing, the landlord must establish by a preponderance of the evidence that the tenant violated or breached material terms of the lease and, thus, the landlord is entitled to immediate possession of the property pending a final judgment."[13]

---

[7] Casterline v. Roberts, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

[8] Id.

[9] Id.

[10] City of Fed. Way v. Town & Country Real Estate, LLC, 161 Wn. App. 17, 41, 252 P.3d 382 (2011), as corrected (May 10, 2011); Casterline, 168 Wn. App. at 381.

[11] Angelo Prop. Co., LP v. Hafiz, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012).

[12] Webster v. Litz, No. 81547-4-I, slip op. at 4 (Wash. Ct. App. July 16, 2021), https://www.courts.wa.gov/opinions/pdf/815474.pdf.

[13] Id.

"Purchase and sale agreements . . . are contracts 'whereby essentially an owner promises to convey, and the purchaser to pay . . . for real estate.'"[14] When interpreting a contract, we give "undefined terms their plain, ordinary, and popular meaning."[15] The "goal is to interpret the agreement in a manner that gives effect to all the contract's provisions."[16] "A contract to enter into a future contract must specify all of its material and essential terms, and leave none to be agreed upon as the result of future negotiations.[17]

Our Supreme Court has outlined 13 material terms of a real estate contract:

> (a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or destruction; (d) insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, (iii) water and utilities; (f) restrictions, if any, on: (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions.[18]

To comply with the statute of frauds, contracts for the sale or conveyance of real property must include a legal description.[19]

---

[14] Geonerco, Inc. v. Grand Ridge Props. IV LLC, 146 Wn. App. 459, 465, 191 P.3d 76 (2008) (second ellipsis in original) (quoting 18 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2d ed. 2004)).

[15] Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007) (citing Kitsap County v. Allstate Ins. Co.,136 Wn.2d 567, 576, 964 P.2d 1173 (1998)).

[16] Id. (citing Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 423, 909 P.2d 1323 (1995)).

[17] Hubbell v. Ward, 40 Wn.2d 779, 785, 246 P.2d 468 (1952).

[18] Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

[19] Pardee v. Jolly, 163 Wn.2d 558, 566-67, 182 P.3d 967 (2008).

The Hovanders do not challenge any of the trial court's findings related to the purchase and sale agreement, making them verities on appeal.[20]  Instead, the Hovanders contest the court's conclusions of law that lead to the court's ultimate determination that the purchase and sale agreement was invalid and unenforceable.

First, the Hovanders challenge conclusion of law 6, that "[t]he evidence at trial did not establish that the [purchase and sale agreement] contained a legal description of the real estate to be purchased and sold, as an agreement term or an attached deed."[21]

The testimony at trial centered on the following documents related to the purchase and sale agreement: the sale and listing agreement between the real estate agency and the Smiths, the 2018 purchase and sale agreement in which every page was initialed by the Smiths and the Hovanders, including an attached but blank "Exhibit A [legal description]," an addendum to the 2018 purchase and sale agreement, a Chicago Title parcel information sheet, a 2005 statutory warranty deed from the Staubs[22] to the Smiths in which someone handwrote

---

[20] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).  For the first time in their reply brief, the Hovanders specifically challenge finding of fact 20 that "[t]he PSA contains no legal description of the land that was to be purchased and sold to the Hovanders by the Smiths."  Appellant's Reply Br. at 5.  We need not consider arguments raised for the first time in a reply brief.  Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018).

[21] CP at 696, conclusion of law 6.

[22] The Staubs were the owners of the property before the Smiths.

"Exhibit A" across the top, and a Chicago Title copy of an aerial photograph and plat map.

The Hovanders rely upon the 2005 statutory warranty deed as the "Exhibit A" legal description for the purchase and sale agreement. But the 2005 deed is signed only by the Staubs and is initialed only by the Smiths. The deed was never initialed by the Hovanders. The record on appeal does not reveal who handwrote "Exhibit A" across the top of the deed. And the record reveals great uncertainty about where and for what purpose that "Exhibit A" was included in the documents submitted at trial. For example, in the record, combinations of the above documents are attached as exhibits to Bearden's declaration, Starlare's declaration, and Tadlock's deposition, but within each group of attachments, the individual exhibits are arranged in a different order.[23]

Specifically, in the attachments to Bearden's declaration, the exhibit that follows the listing agreement is a copy of the 2005 statutory warranty deed conveying the property from the Staubs to the Smiths.[24] The 2005 deed was never initialed by the Hovanders, and there is no evidence who handwrote "Exhibit A" at the top of that copy of the deed. At trial, Bearden testified that the legal description was "at the top" of the purchase and sale agreement and that the 2005 statutory warranty deed containing the legal description was "attached in the middle" of the purchase and sale agreement and the listing agreement when he

---

[23] See CP at 25-57, CP at 311-44, and CP at 564-620.
[24] CP at 40.

"sent out" the documents.[25] Bearden's testimony implies that the 2005 deed was "attached" to the purchase and sale agreement, but he did not offer any explanation why the Hovanders did not initial that copy of the deed if it was intended as an attached legal description to the purchase and sale agreement. And the listing agreement between the Smiths' and Bearden's real estate agency provides that the property is "legally described on the attached Exhibit A."[26] Bearden offers no explanation why the attached "Exhibit A" statutory warranty deed was not instead intended as an exhibit attached to the listing agreement.[27]

In the attachments to Starlare's declaration, the copy of the 2005 statutory warranty deed conveying the property from the Staubs to the Smiths follows the Chicago Title parcel information sheet.[28] This copy of the deed was also never initialed by the Hovanders and has the same handwritten "Exhibit A" at the top of the document.[29]

And in the attachments to Tadlock's deposition, the copy of the 2005 statutory warranty deed conveying the property from the Staubs to the Smiths follows the 2018 purchase and sale agreement with an attached but blank "Exhibit

---

[25] Report of Proceedings (May 28, 2020) at 183.

[26] CP at 35.

[27] CP at 40.

[28] CP at 339-40.

[29] CP at 340.

A [legal description]."[30] This copy of the deed was also never initialed by the Hovanders and has the same handwritten "Exhibit A" at the top of the document.[31]

The only place in the record in which the 2005 statutory warranty deed directly follows the blank "Exhibit A [legal description]" is in the exhibits attached to Tadlock's deposition.[32] Most importantly, the Hovanders have not provided the actual exhibits as they were admitted at the unlawful detainer hearing. And they have the burden of providing an adequate record for appeal.[33]

Because the equivocal evidence in the record does not necessarily establish that the copy of the 2005 statutory warranty deed from the Staubs to the Smiths was attached as an exhibit to the purchase and sale agreement, the trial court as the fact finder could conclude that the purchase and sale agreement included the blank "Exhibit A [legal description]" but that the 2005 deed was not included in or attached as Exhibit A to the actual physical purchase and sale agreement. The court was not compelled to accept that the 2005 deed never initialed by the Hovanders was attached as Exhibit A to the purchase and sale agreement.

The court's unchallenged finding of fact that the purchase and sale agreement "contains no legal description of the land that was to be purchased and

---

[30] CP at 619.

[31] Compare CP at 40, CP at 340, and CP at 619.

[32] Id.

[33] Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

sold to the Hovanders by the Smiths"[34] supports the trial court's conclusion that "[t]he evidence at trial did not establish that the [purchase and sale agreement] contained a legal description of the real estate to be purchased and sold as an agreement term or an attached deed."[35] The purchase and sale agreement was not valid or enforceable for lack of a legal description.

The Hovanders also challenge conclusion of law 4, that "[t]he evidence at trial did not establish that the Hovanders" satisfied the feasibility contingency.[36]

Section 5 of the purchase and sale agreement stated, in part, "This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within [30 days] of Mutual Acceptance stating that this condition is satisfied."[37] The court found there was no evidence that the "Hovanders provided written notice in conformance with these provisions that the feasibility contingency was satisfied."[38]

The Hovanders do not dispute that they never provided written notice to satisfy the contingency; rather, they argue that the contingency did not need to be satisfied for the agreement to be enforceable because it "was simply part of a standard-form contract that had no application to the purchase and sale"

---

[34] CP at 695, finding of fact 20.

[35] CP at 698, conclusion of law 6.

[36] CP at 696, conclusion of law 4.

[37] CP at 8.

[38] CP at 695, finding of fact 22.

agreement.[39]  Even though the Hovanders had been using the property as tenants for several years, the feasibility contingency is a material term of the contract.   As a result, the Hovanders' failure to satisfy this term of the agreement also supports the trial court's conclusion that the purchase and sale agreement was "invalid and unenforceable."[40]

The inconsistent placement of the 2005 deed in relation to the purchase and sale agreement, coupled with the trial court's unchallenged finding regarding the lack of legal description and the Hovanders' failure to satisfy the feasibility contingency, supported the court's ultimate conclusion of law that the purchase and sale agreement was "invalid and unenforceable."[41]

---

[39] Appellant's Br. at 30.

[40] The Hovanders argue that after leasing the property for several years the "feasibility" of the property was not in question.  Id. at 30-31.  But, on this record, the trial court was not compelled to ignore this material term.  The failure to satisfy this term of the agreement was also a reason for the trial court to conclude that the purchase and sale agreement was not a valid basis for a claim of right to possession.

[41] The trial court also relied on two other sections of the purchase and sale agreement, the earnest money provision and the lack of any specified closing date, in concluding that the agreement was invalid and unenforceable.  But those provisions are less compelling.  The Hovanders' failure to deliver or pay the $100 promissory note as an escrow amount is resolved by the court's finding of fact 21, which states that "[t]he evidence at trial did not indicate that this payment was made."  CP at 695.  And as to the lack of any closing date in a purchase and sale agreement, there is at least some authority that a court may impose a reasonable closing date.  Turner v. Gunderson, 60 Wn. App. 696, 703, 807 P.2d 370 (1991).  Because the lack of a legal description and failure to satisfy the feasibility contingency clearly support the trial court's conclusion that the Hovanders failed to establish a right to possession based upon the purchase and sale agreement, we need not give further attention to the escrow and closing date provisions.

The Hovanders argue that the court erred in finding the purchase and sale agreement "invalid and unenforceable" and granting the Estate a writ of restitution because doing so "was outside the limited unlawful detainer jurisdiction of the Court."[42]  But the sole purpose of an unlawful detainer action is to "resolve" who has "the right to possession of the property."[43]  Here the "validity" and "enforceability" of the purchase and sale agreement directly affected the "right of possession."  And because the Estate established by a preponderance of the evidence that the purchase and sale agreement was "invalid and unenforceable," the court properly issued a writ of restitution.

The Hovanders next contend that because the Smiths created the terms of the purchase and sale agreement, the Estate is "estopped from denying the contract as the terms were laid out by the Smiths, not by the Appellants Hovander."[44]  But the Hovanders did not raise this argument at trial.  The first time the Hovanders raised an estoppel argument was in their motion for reconsideration.  "Generally, a party is not permitted to present new argument based on new authority on a motion for reconsideration."[45]  And the Hovanders did

---

[42] Appellant's Br. at 4.

[43] Angelo Prop. Co., LP v. Hafiz, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012) (internal quotation marks omitted).

[44] Appellant's Br. at 23.

[45] Linth v. Gay, 190 Wn. App. 331, 342 n.11, 360 P.3d 844 (2015).

not appeal the court's denial of their motion for reconsideration. The Hovanders' estoppel argument is not compelling.[46]

II. Probate

The Hovanders contend that in the probate of the Estate the trial court committed a procedural error and, as a result, incorrectly denied them specific performance of the purchase and sale agreement. We review the denial of specific performance for an abuse of discretion.[47] A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons.[48]

"Generally, the court has discretion to allow a buyer specific performance of a real estate purchase agreement."[49] "To obtain specific performance, a party must present clear and unequivocal evidence that 'leaves no doubt as to the terms, character, and existence of the contract.'"[50]

Initially, the Hovanders argue that the probate court erred in denying them specific performance because that court merely adopted the unlawful detainer

---

[46] In their opening brief, the Hovanders also argue that the Estate breached its implied duty of good faith and fair dealing by attempting to "withhold" the agreement making the "provision as to earnest money illusory." Appellant's Br. at 22. But in their reply brief, the Hovanders acknowledge that their implied duty of good faith and fair dealing argument was "not raised at all as [an] actual issue[ ]." Appellant's Reply Br. at 7. As a result, we decline to address this issue.

[47] Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 221, 242 P.3d 1 (2010).

[48] Id.

[49] Paradiso v. Drake, 135 Wn. App. 329, 335, 143 P.3d 859 (2006).

[50] Id. (internal quotation marks omitted) (quoting Kruse, 121 Wn.2d at 722).

court's conclusion regarding the purchase and sale agreement instead of conducting an independent analysis. They are mistaken.

In denying the Hovanders' motion for specific performance, the probate court acknowledged, "The court takes notice that in the referenced cause number the same issue of enforcement of the real estate contract was addressed in the unlawful detainer action."[51] The probate court concluded that in "reviewing the record in the current matter, I reach the same decision as Judge Garrett," the judge in the unlawful detainer proceeding.[52] But the probate court also conducted an independent analysis of the purchase and sale agreement.

In particular, the court noted that a contract "must contain all of the material and essential terms" in order for the court to consider specific performance and that the Hovanders had the burden of establishing by "'clear and unequivocal'" evidence that the contract left "'no doubts as to the terms, character, and existence of the contract.'"[53] Because the lack of a legal description, coupled with the Hovanders' failure to satisfy the feasibility contingency, left "doubts" regarding the enforceability of the purchase and sale agreement, the Hovanders failed to meet their burden. And because the probate court conducted an independent

---

[51] CP at 173.

[52] Id.

[53] CP at 174 (quoting Kruse, 121 Wn.2d at 722).

analysis, it did not abuse its discretion by denying the Hovanders specific performance.[54]

III.  Fees on Appeal

The Estate requests attorney fees on appeal.  The lease and the purchase and sale agreement both provide for attorney fees to the prevailing party in litigation.  Because the Estate prevails on appeal, it is entitled to attorney fees on appeal, subject to compliance with RAP 18.1(d).

Therefore, we affirm.

_____

WE CONCUR:

_____  _Mann, C.J._____

---

[54] The Hovanders also contend that the probate court inadequately considered specific performance because it is "obvious that there was no discovery," and the Hovanders were allowed only one brief to support their position.  Appellant's Br. at 32-33.  But there is no indication in the record on appeal that the Hovanders ever requested discovery or permission to submit additional briefing in the probate matter.