[No. 33676. Department One. January 24, 1957.]

BLUE MOUNTAIN CONSTRUCTION COMPANY *et al.*, *Respondents*, v. GRANT COUNTY SCHOOL DISTRICT No. 150-204, *Appellant.*[1]

*Kimball & Clark*, for appellant.

*Joe McAdams* and *Arthur L. Hawman*, for respondents.

[1] Reported in 306 P. (2d) 209.

ROSELLINI, J.—This action was brought to cancel a bid bond on which the plaintiff Blue Mountain Construction Company (hereafter referred to as the construction company) was principal, and the plaintiff American Surety Company was surety. Among the grounds for cancellation set forth in the complaint was an allegation that, although the defendant had purportedly accepted the construction company's bid, the contract furnished by the defendant for execution by the construction company did not comply with the plans and specifications furnished to bidders. The defendant denied this allegation and cross-complained for forfeiture of the bond, alleging that the bid of the construction company had been accepted but that the construction company had failed to execute a contract and give a performance bond.

The case is before this court on the facts found by the trial court, since no error is assigned to the findings. Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953. The material facts found by the court are as follows:

On or about January 28, 1954, the defendant advertised for bids for the construction of a new high school building to be opened on February 16, 1954. The condition of the bond was that, if the bid of the construction company was accepted and it was awarded the contract, the construction company would, within ten days after its bid was accepted, enter into a contract in writing and give bond with surety acceptable to the defendant for the faithful performance of the contract, or if the company should fail to do so, the surety would pay to the defendant the damages suffered by reason of such failure, not exceeding five per cent of the maximum amount bid.

· The bid of the construction company was found to be the lowest bid. Various negotiations followed between the construction company and the defendant, and on March 16, 1954, a letter was delivered to the construction company by the defendant's architect and authorized agent, reading as follows:

"Mr. C. H. Storms, Manager
Blue Mountain Construction Company
Moses Lake, Washington
"Dear Mr. Storms:
"Your proposal, dated February 16, 1954, for construction of the High School for Coulee City School District 150-204J, is hereby accepted as of this date. The contract is awarded to you.
"The total of all work accepted is $203,079.00, plus $6,002.37 Washington State sales tax, making a total of $209,081.37.
"Please refer to the 'Instructions to Bidders' of the Specifications and also the 'General Conditions' for Agreement and Performance Bond requirements.
"The Agreement between Contractor and Owner and the Contract Documents are now ready for your signature."

The letter was signed by the defendant's architect, the chairman of the school board, and the superintendent of schools. A form of contract was submitted to the plaintiffs along with the letter. The contract, which contained provisions differing from the terms of the offer, was signed by officers of the defendant. It had been understood that the defendant would furnish a memorandum of contract if and when the construction company's bid was accepted.

The proposed contract was never executed by the construction company's officers, nor was a contract prepared and submitted to the defendant by the construction company. Negotiations concerning the work to be performed were carried on throughout the ten-day period following the delivery of the letter of acceptance, but no specific objections were made to the wording contained in the contract submitted by the defendant. The construction company never withdrew its bid or requested that its bid be withdrawn. On April 8, 1954, the defendant notified the construction company by letter that, inasmuch as it had failed to enter into a contract for the construction of the school building as set forth in its bid and furnish a performance bond within the time stated in the bid and in the invitation for bids, the acceptance of the bid would be withdrawn and action taken to collect on the bid bond.'

The contract was then awarded to the next low bidder, whose bid was approximately $23,000 higher than that made by the construction company.

The invitation to bid called for a basic bid and bids on certain alternates and addenda, all or a part of which might be accepted by the defendant. The construction company's basic bid was in the amount of $197,670, and its bid with all the alternates and addenda included was in the sum of $248,000.

The trial court concluded that the letter of "acceptance" did not constitute an acceptance, since it was impossible to determine from the letter, standing alone, which alternates and addenda had been accepted and which had been rejected; that the letter had to be read with the proposed contract which was delivered with it; and that, since this contract differed from the bid in certain respects, it constituted a counteroffer rather than an acceptance. Judgment was given for the plaintiffs, canceling the bid bond.

There were two significant differences between the bid submitted by the construction company and the contract proposed by the defendant. Both of these occur in the addenda. Addendum 14 (numbered 15 in the contract, through obvious typographical error) called for site development according to plans and specifications provided therein; the contract provided for only a portion of this site development, without specifying which portion. Also, the contract contained a provision that the bidder would hold open its bid on approximately sixteen thousand dollars of the addenda until June 1, 1954, a provision not contained in the invitation or the bid.

The acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract. *Schuehle v. Schuehle*, 21 Wn. (2d) 609, 152 P. (2d) 608. An expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer; but it is not an acceptance and consummates no contract. 1 Corbin, Contracts, 259, § 82; *St. Paul & Tacoma Lbr. Co. v. Fox*, 26 Wn. (2d) 109, 173 P.

(2d) 194. See, also, *McGregor v. Inter-Ocean Ins. Co.*, 48 Wn. (2d) 268, 292 P. (2d) 1054.

■ The appellant maintains that its letter of March 16, 1954, operated as an acceptance of the bid, and that thereafter both parties were bound to enter into a contract in accordance with the terms of the bid. The difficulty with this contention is that, by its terms, the bid contained a number of optional performances, which the defendant was free to accept or reject. The defendant's letter of March 16, 1954, gave no clue as to which of the addenda it had accepted, although the total amount accepted indicated that it had chosen some of the addenda. On the basis of this letter alone, the construction company would have been at a loss to determine which of the optional performances had been selected by the defendant.

To find the extent of the defendant's acceptance, it is necessary to examine the proposed contract which was submitted with the purported letter of acceptance; and this proposed contract contains two provisions not mentioned in the bid, one of them involving sixteen thousand dollars of materials and services. Certainly, the construction company was under no obligation to execute this contract, and a contract conforming to the provisions of the offer was never submitted for its signature. The trial court correctly held that the letter of March 16, 1954, was too indefinite to constitute an acceptance, and that when read with the contract, it amounted to a counteroffer, which was never accepted.

■ The appellant further argues that the new provisions in the proposed contract were mere requests for changes, and that its acceptance was not conditioned upon them. However, they are not worded as requests, nor is there any reference to them contained in the letter. On the contrary, the letter states that the agreement is "now ready for your signature." The only reasonable inference is that the writing contained all of the provisions, and the only provisions to which the defendant was willing to assent.

■ It is urged that the purported acceptance obligated the defendant to enter into a contract covering the basic

bid in any event, since that portion of the contract was not optional. But there is nothing in the contract to indicate that the defendant was willing to let a portion of it to the construction company even though the construction company should prove unwilling to accept the new terms and conditions. For aught that appears in the proposed contract, the agreement to keep the bid open on sixteen thousand dollars of addenda for an additional sixty days is a vital and material part of it, and one on which the acceptance was conditioned.

For a case very similar to this one, see *R. J. Daum Constr. Co. v. Child* (Utah, 1952), 247 P. (2d) 817, wherein it was held that a contractor's proposed written contract with subcontractors, which varied from the subcontractors' previous bid as to a waiver of all claims against the contractor and a fifty dollar a day penalty for failure to complete the job in a certain time was a counteroffer and not an unconditional acceptance of the bid.

We conclude that, upon the facts found by the trial court, the minds of the parties never met, and the cancellation of the bond was properly ordered.

The judgment is affirmed.

DONWORTH, SCHWELLENBACH, FINLEY, and FOSTER, JJ., concur.