[No. 35071. Department One. April 28, 1960.]

OWENS-CORNING FIBERGLAS CORPORATION, *Respondent, v.* FOX SMITH SHEET METAL CO. *et al., Appellants.*[1]

[1]Reported in 351 P. (2d) 516.

*R. Max Etter, Ellsworth I. Connelly* and *Robert Weinstein,* for appellants.

*Jones & Grey* and *Albert Olsen,* for respondent.

HUNTER, J.—This is an appeal from a judgment for the plaintiff entered in an action for breach of contract. The action instituted by the plaintiff, Owens-Corning Fiberglas Corporation, against the defendants, Fox Smith Sheet Metal Company and the United Pacific Insurance Company, arose out of the following facts.

The Bechtel Corporation entered into a contract with the Shell Oil Company to build a refinery at Anacortes, Washington. One phase of the construction involved covering the refinery structures with insulating material and aluminum sheeting. The plaintiff company, while negotiating with the Bechtel Corporation for the insulation subcontract, dispatched invitations to bid on the sheet metal phase of the insulation work to the defendant sheet metal company and two other sheet metal firms.

To facilitate the preparation of its bid, the defendant sent one Paul R. Inman, an experienced engineer and estimator, to plaintiff's Los Angeles office. Upon his arrival, Inman conferred with plaintiff's contract manager and was provided with all the plans and specifications which had been furnished by the Bechtel Corporation. Before leaving Inman submitted a tentative cost figure, which members of the plaintiff's staff thought to be lower than practical. Pursuant to their suggestion, the prices per unit were raised, but subsequently the parties agreed all prices appearing on the bid would be reduced fifteen per cent. On February 8, 1955, the defendant submitted a bid based upon the plans and specifications, quoting total and unit prices for the work to be performed.

Plaintiff replied to defendant's proposal on February 17, 1955, as follows:

"  . . .

"This letter *is to serve as our interim Purchase Order* and is a letter of intent which should serve as prospective authorization for you to purchase and fabricate metal mate-

rials in strict accordance with your letter of February 8, 1955. *A firm Purchase Order will be forwarded to you within five days from this date.*" (Italics ours.)

The subcontract between the Bechtel Corporation and the plaintiff was entered into on February 15, 1955. On March 15, 1955, a job conference was held at the job site, which was attended by representatives of the Shell Oil Company, the Bechtel Corporation, and the plaintiff and defendant companies. During the latter part of April some of the materials for the job, which had been prefabricated in the defendant's Spokane shop, were shipped to the job site. Plaintiff's foreman went to Anacortes about the first of May, but it was later in the month when the insulation and sheet metal work actually commenced.

Mr. John Smith, president of the defendant company, visited the project site on June 13, 1955. Subsequently, in a letter, dated June 20, 1955, to the plaintiff, he expressed surprise at finding that many tanks had stairways and platforms installed, and stated that this required a substantial amount of additional cutting and fitting, not included in the original plans and specifications, and not contemplated in the defendant's bid. He went on to inform the plaintiff that this would make it impossible to perform at the original bid price, but that he would be willing to negotiate a new price.

On July 7, 1955, following a meeting with the manager of the plaintiff's Los Angeles office, Mr. Smith wrote to the plaintiff corporation and informed it that defendant's original bid would have to be increased thirty-six thousand dollars. This was refused by the plaintiff and, on July 11, 1955, the defendant withdrew from the project.

The plaintiff then entered into a contract with another firm to complete the sheet metal work. Subsequently, the plaintiff commenced this action for breach of contract. The defendant Sheet Metal Company cross-complained seeking recovery on a *quantum meruit* basis for work done prior to leaving the project. Judgment was entered for the plaintiff and against the defendant on its cross-complaint. Additional testimony was taken to determine the amount the

defendant was to be allowed as compensation for extra work, which sum was deducted from the amount of damages awarded to the plaintiff. The defendant companies appeal.

The sole question essential to a disposition of this appeal is whether a valid contract ever existed between the appellant sheet metal company and the respondent.

The trial court found that the appellant's offer was accepted by the respondent's letter of February 17, 1955, and the parties intended and understood that the appellant's proposal of February 8th, and respondent's acceptance of February 17th, constituted a binding contract. The record does not support these findings of the trial court.

An acceptance of an offer must always be identical with the terms of the offer or there is no meeting of the minds and no contract. *Blue Mountain Constr. Co. v. Grant County School Dist.*, 49 Wn. (2d) 685, 306 P. (2d) 209 (1957); *Ferris v. Blumhardt*, 48 Wn. (2d) 395, 293 P. (2d) 935 (1956). The respondent's letter of February 17, 1955, expressly states it is only a temporary order to be followed in five days by a firm order. At the end of the five-day period the appellant's offer was still in existence, and capable of being accepted, but no "firm" purchase order was transmitted by respondent. The next correspondence between the parties was respondent's letter of March 8, 1955, advising appellant of the pending job conference and containing the following language:

" . . .

"Bechtel was not particularly satisfied with the details which you submitted and we also believe that we can do the work for less money than would be the case with the details you submitted. Consequently, we proceeded with details here copies of which I am forwarding you under separate cover Air Mail today.

"Friday, March 4th, I met with Bechtel engineers in San Francisco regarding these details and have tentative approvals at this particular moment. We would suggest you look these over and be prepared to discuss them thoroughly with us on the coming Monday so that when we enter into the job conference we will be agreed amongst ourselves at

least as to what we can or cannot do. Will you please advise me Air Mail at once if this will suit your plans.

"We have not finalized a purchase order for you since we think it would be more fitting to do so after we meet Monday and Tuesday. . . ."

It seems apparent from the language of this letter that the respondent only intended to enter into a "firm" agreement when and if the details were worked out at the ensuing conference.

Later correspondence between the parties indicate clearly that the conference had left details unresolved, or that new uncertainties had subsequently arisen. On May 11, 1955, the respondent sent the following letter to appellant:

"  .   .   .

"Enclosed please find latest revised prints. These revisions have been based upon recommendations over our various additions by Bechtel engineering forces.

"  .   .   .

"At the present moment I believe this will clear up all details with the exception of the sheet metal details for the two tanks in question. Your Mr. Scharvanous upon my recent visit to the jobsite agreed that between himself and our Mr. Swanson they would make a check of the measurements of these tank tops so that you would furnish us a sketch and a price per tank for accomplishing the metal work.

"  .   .   .

"P.S. Your firm contract is in the course of composition."

On June 9, 1955, in a letter from respondent, discussing certain construction details and asking for appellant's price therefor, the following appears:

"  .   .   .

"We are very much aware that we have as yet not provided a firm contract to you for your part of this job. It is, perhaps, fortunate that we have not accomplished this as yesterday's mail brought revised schedules of equipment and these will need to be analysed during this week and we feel that we can assure you that this should sum up the changes instigated by Shell and Bechtel, thus permitting us to write your contract and provide in it the various item unit prices as per your original quotation to us. Any differences that occur that could be caused by some change in

design, if any, we can adjust since we will have an opportunity to also adjust our own prices. . . ."

It is clear from all of respondent's correspondence with the appellant that certain details remained to be worked out preliminary to the execution of any contract. It is also clear that the respondent could not have considered itself bound by its letter of February 17, 1955, since it did not know whether the quantity and quality of work to be required by the prime contractor might be materially different from that set forth in the appellant's original bid.

■ It is respondent's position that the subsequent conduct of the parties resulted in a contract without regard to the letter of February 17th. We disagree. The subsequent conduct of the respondent as manifested by its letters to the appellant cannot be reasonably construed as a manifestation of intention to be bound because it was still negotiating with Shell and Bechtel on the one hand and the appellant on the other. Since the appellant was the original offerer, and there was no acceptance, its subsequent conduct could not result in a contract unless such conduct constituted an acceptance of a counteroffer. However, no such counteroffer was made prior to June 9, 1955, which the appellant could accept, and the record is absolutely devoid of any evidence of such a counteroffer between June 9, 1955 and July 7, 1955, when the appellant revoked its original offer by increasing its bid to the respondent.

We are satisfied there was no meeting of the minds of the parties and that no contract came into existence. The judgment of the trial court is, therefore, reversed and the cause remanded with directions that the respondent's action be dismissed, and that a new trial be had on appellant's cross-complaint.

WEAVER, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

---

June 17, 1960. Petition for rehearing denied.