IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ESTATE OF HELENE DOST;<br>ROBERT W. DOST, an individual; and<br>SUSAN H. FRANCIOLI, an individual, | ) ) ) ) | No. 82959-9-I<br><br>DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| MUKILTEO RETIREMENT<br>APARTMENTS, LLC, a Washington<br>limited liability company;<br>DUANE CLARK, individually and on<br>behalf of his marital community; and<br>RON STRUTHERS, individually and on<br>behalf of his marital community, | ) ) ) ) ) ) ) ) | |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| MILESTONE RETIREMENT<br>COMMUNITIES, LLC, a Delaware<br>limited liability company; MILESTONE<br>RETIREMENT COMMUNITIES OF<br>WASHINGTON, LLC, a Washington<br>limited liability company; CSH<br>HARBOUR POINTE, LLC, a Delaware<br>limited liability company; and unknown<br>members of Mukilteo Retirement<br>Apartments, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

BOWMAN, J. — Helene Dost's estate and her two children Robert Dost and

Susan Francioli (collectively Estate) appeal a trial court order enforcing a

settlement agreement with Mukilteo Retirement Apartments LLC and its

principles Duane Clark and Ron Struthers (collectively MRA). The Estate argues

Citations and pin cites are based on the Westlaw online version of the cited material.

there was no enforceable agreement because MRA did not assent to all material terms of its offer. We agree. We vacate the trial court's order enforcing the settlement agreement and remand for further proceedings below.

FACTS

MRA owned and operated the Harbour Pointe Retirement and Assisted Living Center[1] in Mukilteo. Dost, a very active and outgoing person, lived alone in an apartment at Harbour Pointe in 2015. Early one morning in September as she was leaving the bathroom, Dost's left knee gave out and she fell. Dost called out for help and tried to get off the floor all day. But no one came and she could not stand up by herself.

Around 7:00 p.m., Dost's children Susan and Robert[2] tried to call her. Unable to reach Dost, Susan called every 15 minutes until she finally answered. Dost told Susan that she had been on the floor since 5:30 a.m. Susan immediately called 911 and the nurse's station at Harbor Pointe. Dost was hospitalized and over the following weeks, her health rapidly declined. Dost died in November 2015, less than eight weeks after the incident.

In September 2018, the Estate sued MRA[3] for negligence resulting in Dost's wrongful death. On November 4, 2020, the Estate e-mailed MRA and its insurance company a letter offering to settle the claims on three conditions. First,

[1] Now known as Harbour Pointe Senior Living. In September 2015, Clark and Struthers sold MRA to CSH Harbour Pointe LLC.

[2] We refer to Dost's children by their first names for clarity and intend no disrespect by doing so.

[3] The complaint also named Milestone Retirement Communities LLC and CSH Harbour Pointe as defendants. But as part of the 2015 purchase and sale agreement, MRA retained responsibility for the Estate's claim. As a result, the Estate voluntarily dismissed Milestone Retirement Communities and CSH Harbour Pointe from the lawsuit.

the Estate offered to settle for the "policy limits on [MRA's] $1,000,000 tail insurance policy." But the offer was "conditioned upon" two more provisions. MRA must provide "sworn representations that the disclosed $1,000,000 tail insurance policy is the only insurance agreement that may provide coverage to satisfy all or part of any judgment," and any compensation must "be considered payment for general damages." The Estate set 5:00 p.m. on November 18, 2020 as the deadline to accept the offer.

On November 16, 2020, counsel for MRA's insurance company replied:

> In response to the settlement demand conveyed in your November 4, 2020 letter, I am authorized on behalf of the Defendants to accept your global settlement demand for the amount remaining in the eroding tail insurance policy, in full and final settlement of all claims against all Defendants in this matter.

MRA offered to "get a proposed settlement agreement and release prepared" for the Estate's review.

MRA sent the Estate a draft settlement in December 2020. MRA acknowledged that it would pay the rest of the eroding tail insurance policy in "full and final satisfaction of all claims." But it did not acknowledge an agreement to provide declarations or an agreement that it would classify the payment as general damages.

Between January and March 2021, MRA and the Estate exchanged several e-mails but produced no other draft agreements. Then, on March 30, 2021, the Estate sent MRA a letter contending that MRA's draft agreement did not include all the material terms of the Estate's original offer and that MRA's response amounted to "nothing more than a counteroffer" that "materially

3

deviates from [the Estate's] original offer." It rejected the "counteroffer" and rescinded the original offer as "expired."

In May 2021, MRA moved to enforce the settlement agreement. It argued the Estate refused "to abide by the policy limits settlement agreement <u>which they themselves offered and [MRA] timely accepted</u>." The court granted MRA's motion. It determined that "there was a clear and enforceable contract created when [MRA] accepted [the Estate's] settlement offer by e[-]mail."

The Estate moved for reconsideration. The court denied the motion, finding MRA accepted the offer on November 16, 2020 "as to the three material conditions set forth in [the Estate's] November 4, 2020 offer."

The Estate appeals.

ANALYSIS

The Estate argues the trial court erred by granting MRA's motion to enforce the settlement agreement. It contends the parties did not mutually assent to form a contract because MRA did not accept all material terms of the Estate's offer. We agree.

Trial courts follow summary judgment procedures when considering a motion to enforce a settlement agreement based on only declarations. <u>Condon v. Condon</u>, 177 Wn.2d 150, 161, 298 P.3d 86 (2013). " '[T]he party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the existence and material terms of the agreement.' " <u>Id.</u> at 162[4] (quoting <u>Brinkerhoff v. Campbell</u>, 99 Wn. App. 692, 696-97, 994 P.2d 911

_____

[4] Alteration in original.

4

(2000)). Courts must consider the evidence in the light most favorable to the nonmoving party to determine whether reasonable minds could reach only one conclusion. Id. Because a proceeding to enforce a settlement is similar to summary judgment, we review the court's order de novo. Id.

We consider settlement agreements under the common law of contracts. Condon, 177 Wn.2d at 162. Washington follows the objective manifestation test for contracts, looking to the objective manifestations of the parties to determine whether there is a meeting of the minds. Id.; see Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 125-26, 881 P.2d 1035 (1994). The unexpressed subjective intent of the parties is irrelevant. Condon, 177 Wn.2d at 162-63. To form a valid contract, the parties must objectively manifest their mutual assent. Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388, 858 P.2d 245 (1993). Generally, parties express mutual assent through an offer and acceptance. Id. Once a party makes an offer, there is no valid contract until the offer is accepted. Veith v. Xterra Wetsuits, LLC, 144 Wn. App. 362, 366, 183 P.3d 334 (2008).

" 'The acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract.' " Sea-Van, 125 Wn.2d at 126 (quoting Blue Mountain Constr. Co. v. Grant County Sch. Dist. No. 150-204, 49 Wn.2d 685, 688, 306 P.2d 209 (1957)). An acceptance can request a modification of terms so long as the modified terms are not conditions of acceptance and the acceptance is unequivocal. Id. But any material variance

between the offer and acceptance precludes the formation of a valid contract.  Id.
What constitutes a material variation depends on the facts of each case.  Id.

Here, the Estate's offer contained three material terms.  (1) Payment for
the amount remaining on the tail insurance policy, (2) sworn declarations from
MRA that no other insurance policy exists that may provide coverage to satisfy
any part of a judgment, and (3) payment classified as general damages.  But the
attorney for MRA's insurance company responded that he was "authorized on
behalf of the Defendants to accept your global settlement demand for the amount
remaining in the eroding tail insurance policy, in full and final settlement of all
claims."  The response was silent about the two other material terms.

MRA argues that its response was "unambiguous" and "unconditional" as
to its acceptance of all material terms.  According to MRA, it did not need to
"reiterate all three material terms" to accept the offer, and counsel's statement
that "I am authorized on behalf of the Defendants to accept your global
settlement demand" established that MRA "accepted the terms as laid out by the
[Estate]."  But MRA's argument ignores the rest of defense counsel's statement
where he qualifies MRA's acceptance to the demand "for the amount remaining
in the eroding tail insurance policy."  MRA's silence about two of the Estate's
essential terms amounts to a material variation from the original settlement offer.
See Sea-Van, 125 Wn.2d at 126-27 (no meeting of the minds where the only
material term agreed to was price).

Viewing the objective manifestations of the parties in the light most
favorable to the Estate, MRA did not establish there was mutual assent to all

material terms of the Estate's offer.[5]  We vacate the trial court's order enforcing

the settlement agreement and remand for further proceedings below.

Brennan, J

WE CONCUR:

Mann, J.

Verellen J

---

[5] Because we determine that the plain language of MRA's response to the Estate's settlement offer does not show mutual assent, we need not reach the Estate's argument that we should consider extrinsic evidence under the context rule.  See Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990).  Nor do we need to address the Estate's argument that because the parties did not agree in open court or in writing to limit the settlement to one material term, enforcing the agreement amounted to legal error under CR 2A (stipulations) and RCW 2.44.010 (authority of attorney).