[No. 29414.    Department One.    October 24, 1944.]

MARTIN SCHUEHLE, *Appellant,* v. GEORGE SCHUEHLE *et al.,*
*Respondents.*[1]

*DuPuis & Ferguson,* for appellant.

*Carkeek, Harris, Harris & Carroll,* for respondents.

GRADY, J.—The appellant brought this action against the respondents to recover judgment for a sum of money which he claimed was owing for the purchase price of an undivided one-half interest in a lot and building the parties own in common, or, in the alternative, for a decree restoring such interest to him, and for incidental relief.  The respondents set out in their answer that they had paid the full purchase price for the appellant's interest in the property.  The trial of the case resulted in a judgment dismissing the action, from which this appeal has been taken.

We are confronted with a somewhat complicated chain of events, evidenced by documents and the conduct of the parties, out of which it must be determined whether the

[1] Reported in 152 P. (2d) 608.

parties ever had such a meeting of minds, upon the terms of a sale and purchase of the interest of the appellant in the property involved, as would make a binding contract.

The appellant and his brother George, who will be referred to as though he were the sole respondent, had become estranged to such an extent that they dealt with each other by correspondence, and finally through their respective attorneys. Under these circumstances, it was desirable that one of them buy from, or sell to, the other his interest in their common property. To that end, on June 20, 1940, the respondent sent to the appellant the following letter:

"Mr. M. Schuehle:

"Pertaining to 1936-40 1 Ave. So. Realizing that things can not go on much longer the way it did for some time past without serious convulsions, therefore I make you this proposal: $8000.00 cash and the once returned certified check, yet in my possession, with a Warranty Deed for my half, or I except [accept] the same proposal from you.

"George Schuehle"

It is right here that the foundation to this lawsuit was laid. The certified check referred to was one given by appellant, and payable to respondent, on April 19, 1937, for the sum of $2,860. By reason of a memorandum on the back of the check of the sums making up the check, made by appellant and construed in part by respondent as an adjustment of a dispute over a saw, the respondent did not present it for payment, though he retained possession of it.

The respondent contends he meant by the above-quoted letter to offer the appellant eight thousand dollars in cash for his interest in the property and to return the check so that it could be canceled and the money represented by it credited to the bank account of the appellant.

The appellant construed the offer to be one for a total sum of $10,860. He did not accept the offer, but made a counter-offer in the form of an escrow which he had deposited in a bank. This consisted of a warranty deed of his interest in the property to respondent, as grantee, title insurance policy, and a blue-print survey; and the bank was instructed to deliver the deed and the other documents to respondent upon the payment by him of $10,860; also, if the money was

not received by the bank on or before July 14, 1940, it was to return the deed and documents to appellant upon demand.

The respondent was notified by the bank of the terms of the offer, as instructed by appellant. He did not accept it, but, under date of August 18, 1940, wrote a letter to appellant, offering to sell his interest in the property for ten thousand dollars, and stating that, if appellant had any other proposition to make, he should let him know.

On August 19th, and in response to the communication, appellant wrote to respondent, reciting that, on June 29th, "at your request," he had deposited a deed in the bank "at your figure," thus indicating he still considered the original offer of respondent to have been on the basis of $10,860. The balance of the letter amounted to a rejection of the offer of respondent to sell for ten thousand dollars.

On October 28th, respondent wrote to appellant, seeking to learn why appellant would not accept his offer of eight thousand dollars and the return of the certified check, and further indicating a desire to negotiate a sale or purchase rather than to make legal proceedings necessary. Not receiving any response, the respondent deposited a check in the bank, dated January 18, 1941, in the sum of ten thousand dollars, payable to the appellant, and a form of warranty deed for the appellant and his wife to execute; and the bank was instructed to deliver the check to the appellant upon the execution of the deed, with revenue stamps attached, and an insurance policy assignment made by him. The instructions were to remain in effect until revoked by respondent in writing.

On January 29th, the bank notified the appellant that it had the check and deed, and set out the instructions. On February 8th, the appellant was notified by the bank that the respondent had added another instruction: That appellant should deposit with the bank the sum of two hundred dollars, less deductible expenses, and further directed the bank that, unless the appellant complied with all the instructions given on or before February 14, 1941, they would be canceled.

On February 14th, appellant got possession of the deed, struck out the name of his wife, the recited consideration of ten thousand dollars, the words "in hand paid" and "warrant," dated it as of that day, and signed it before a notary public. On March 9th, he wrote a letter to the respondent, enclosing the deed, insurance policy, and some checks and other papers, the material language being as follows:

"I am sending you Deed, Insurance Policy, Checks and papers to your property at 1936 38 First Ave. South and expect your check for same. Now this deal is at your request and at your figures."

Right here is the climax of the whole trouble. The appellant was referring to the first offer made by respondent, as he had construed it: an offer to purchase for the sum of $10,860. When respondent received this communication, he construed it to be an offer to sell for his previous offer of ten thousand dollars, notwithstanding that that sum had been stricken from the deed he had prepared for the appellant to execute. The respondent presented the deed to a title company and was advised to secure a quitclaim deed from appellant. The attorney for respondent, who was also a notary public, presented such a deed to appellant and explained its purpose, and appellant signed it.

There was a sharp dispute at this point between the appellant and the attorney. The appellant claimed that, when he signed the deed and gave it to the attorney, he asked him if he had the money, to which the attorney replied that he did not; that he then hesitated about signing the deed, and the attorney said, "I will see to it that you get your money," and he then signed the deed. This is denied by the attorney. The trial judge accepted the version of the transaction given by the attorney, and we see no reason to reject his finding.

The appellant did not receive any payment for the property he had conveyed, so he made a written demand for it upon respondent, but he did not state any specific amount, though it is apparent he expected at all times the sum of $10,860. A similar demand was made September 5th. On September 8th, the respondent sent appellant a certified

check, payable to him, for $9,590.99, and, in a letter, explained that it represented a purchase price of ten thousand dollars, plus a credit of $11.99, less twenty-one dollars paid for revenue stamps placed on the quitclaim deed, and four hundred dollars, representing two months' rental.

On September 10th, appellant informed respondent that the amount of the check was not correct, and set forth a statement of what he considered were the respective debits and credits between them, based on a price of $10,860 for appellant's interest in the property. Receiving no response to this communication, appellant wrote respondent a letter on October 13th, explaining that, as he had not received an additional check from him, he enclosed the certified check. The letter, with the enclosed $9,590.99 check, the respondent refused to receive. Another attempt to return the check through the mail failed in the same way.

On December 31st, attorneys for appellant sent the check to the bank, with the request that it be canceled and the money represented by it be deposited to the account of respondent. The respondent refused to accept the money, and this action followed.

We have set forth the chain of events in detail as they took place, for the reason that we have arrived at a different conclusion from that reached by the trial judge. It will be seen that there was a series of offers and counteroffers, with rejections either by means of nonacceptance or by counteroffers, and hence no meeting of minds of the respective parties and no contract.

The trial judge was of the opinion that, when the appellant sent the warranty deed dated February 14, 1941, to respondent with his letter stating, "Now this deal is at your request and at your figures," it constituted an offer to sell for the sum of ten thousand dollars, and that the offer was accepted by the sending of respondent's certified check for $9,590.99; and that the respondent was legally justified in withholding the difference after adding a credit to which appellant was entitled.

■■ We cannot accept this conclusion because the offer is indefinite as to price to be paid, and, therefore, one that

could not be accepted so as to constitute a contract. There was lacking the necessary mutual assent as to one and the same thing, namely, the amount of the purchase price. The phrase "at your figures" did not mean the same to each party. The offerer intended it to mean $10,860, and the offeree thought it meant ten thousand dollars.

We cannot reach a result in a situation like this by applying the ordinary rules of construction to ascertain the intention of the parties. It is not a case where we can say that the appellant must have intended to have meant ten thousand dollars. The record throughout shows that appellant, by his words and conduct, had in mind the sum of $10,860. He rejected every other suggestion. The net result is that, after several offers and rejections, the appellant made an indefinite offer, and, although the respondent endeavored to accept it, the parties did not make a binding contract.

The rule is stated in 17 C. J. S., Contracts, Certainty of Offer, p. 364, § 36 c (1), as follows:

"It is essential to a contract that the nature and the extent of its obligations be certain. If an agreement is uncertain it is because the offer was uncertain or ambiguous to begin with, for the acceptance is always required to be identical with the offer, or there is no meeting of minds and no agreement. If the person to whom the offer is made sees the uncertainty and proposes a change which will make the agreement certain, this puts an end to the offer, and the agreement which he has suggested is the result of his new offer and the acceptance of the original proposer. Therefore, if the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement."

The text is so well supported by other authority that we deem it unnecessary to cite or quote it. The rule as stated is applicable here. The respondent put his own interpretation on the indefinite and uncertain offer of the appellant. But even then he did not accept the offer by paying the appellant the sum of ten thousand dollars. Without consulting the appellant and securing his assent, he added a

credit in an amount fixed by himself, and then made deductions of his own motion.

We are of the opinion that the appellant and the respondent have made no contract for the sale and purchase of the interest of the appellant in their common property. The action of the trial court in dismissing the part of the action seeking a money judgment was correct, but it should have granted the alternative relief asked and restored the title of appellant in the property to him, and have awarded him his costs and disbursements.

The case is remanded to the trial court for the entry of a decree in accordance with this opinion. The appellant will recover costs in this court.

SIMPSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.