[No. 2123–3.   Division Three.   January 11, 1978.]

THE CITY OF ROSLYN, *Respondent,* v. PAUL E. HUGHES
CONSTRUCTION COMPANY, INC., ET AL,
*Appellants.*

*George Butler* and *Butler, Heye, Cowan & Wolcott,* for appellants.

*Brian Frederick* and *Schuller, Frederick & Beckley,* for respondent.

GREEN, J.—Defendants appeal from a judgment for damages in favor of plaintiff, City of Roslyn, for breach of contract. The controlling issue presented is whether a valid and enforceable contract was created between the parties. We reverse.

In April 1972, the City of Roslyn (City) issued a public call for bids for construction of a sewage collection and

treatment system. Hughes Construction Company (Hughes) submitted a bid proposal in accordance with the bid call. The bid documents expressly included and incorporated the terms and conditions of the notice and instructions to bidders, the construction contract, and the detailed specifications and plans. According to these documents, the City reserved the right to delay the award of the contract, even though the bid opening was June 5, 1972:

> No bidder may withdraw his bid after the hour set for the opening thereof, or before the award of contract, unless said award is delayed for a period exceeding sixty (60) days.

The notice and instructions to bidders provided:

> 5. The party to whom the contract is awarded will be required forthwith to execute the contract and a performance and payment bond within 10 calendar days from the date when the written notice of award of the contract is mailed to the bidder at the address given by him. . . .
>
> 6. It is understood that *the work to be done is being financed with a loan or grant or both from the Farmers Home Administration, U.S. Department of Agriculture. Contractors' proposals shall hold firm for 60 days to allow the owner to complete its financing arrangements. Mutually agreed upon extensions of time may be made, if necessary.*
>
> . . .
>
> 16. For the purpose of clarification it is understood that the work to be done is being financed in whole or in part by means of a loan and grant made or insured by the United States acting through the Farmers Home Administration of the Department of Agriculture. *The Farmers Home Administration will, therefore, require approval by its representatives of all contracts, attachments, and similar documents, all partial and final payment estimates, and all change orders.*

(Italics ours.)

Hughes submitted its bid proposal on the form provided in the bid documents. It contained the following terms:

> 2. The undersigned bidder does hereby declare and stipulate that this proposal is made in good faith . . . and that *it is made in pursuance of and subject to all*

*the terms and conditions of the notice and instructions to bidders,* the construction contract, the detailed specifications, and the plans pertaining to work to be done, all of which have been examined by the undersigned.

. . .

4. The undersigned bidder *agrees to execute the contract and a performance bond for the total of this bid within 10 calendar days from the date when the written notice of the award of contract is delivered* to him at the address given on this proposal.

(Italics ours.)

The foregoing provisions of the bid documents clearly provide that a bid could not be withdrawn for 60 days "to allow the owner [City] to complete its financing arrangements" with FHA. It is also clear that any extensions of the 60-day time limit were to be "mutually agreed upon." Further, the documents notified the bidder that FHA approval of all "contracts, attachments, and similar documents, all partial and final payment estimates, and all change orders" would be required.

On August 4, 1972, the 60th day after the bid opening date, the City sent a written notice of award to Hughes, the low bidder. This notice was identical to the form of the notice of award set forth in the bid documents; except, it contained the following additional terms:

Because of need to obtain modification of building right-of-way permits, without which FHA's necessary approval and acceptance of the contract cannot be secured, there may be a delay. As you know, in the notice and instructions to bidders and in the contract documents the award and letting of the contract cannot be made without approval and acceptance of the FHA.

Since there may be a delay, you need not submit the necessary contract performance and payment bond and insurance until required by FHA or until FHA approves and accepts this award of contract, whichever is earlier.

If there is a delay, in fairness to you the City of Roslyn will not require you to work on the project between October 15, 1972 and May 15, 1973, and will extend the completion date accordingly.

After receipt of this notice, Hughes informed the City that because there were serious uncertainties relating to the length of time that may be taken by FHA, the notice should contain language to protect it in the event the delay would force construction well into the next year, increasing the cost of materials, supplies and labor. However, if FHA approval was given in time to start the project by August 30, 1972, Hughes offered to accept the contract. No change in the notice was made by the City regarding these requests. Subsequently, on August 22, Hughes informed the City that it was withdrawing its bid and would not execute the contract.

Some time thereafter, the City prepared new bid documents and a call for bids. The construction contract was awarded to a different contractor, and the project was finally completed at a greater cost to the City than the bid proposed by Hughes, partially due to changes in the plans and specifications. The City commenced this action for damages for breach of contract.

The trial court determined that Hughes' bid constituted an offer to contract and the written notice of award was a valid acceptance of this offer. In support of this determination, the court found that the notice was substantially as set forth in the contract documents, added no new conditions or requirements, merely reminded Hughes that the contract required approval by FHA, extended the completion date bid omitting October 1972 to May 1973, and allowed Hughes to defer submission of the necessary bonds. The trial court concluded that Hughes breached the contract and awarded damages to the City.[1]

---

[1] The trial court also found that the City's delayed award resulted in part from Hughes' actions requesting FHA interpretation of certain contract provisions relating to materials. Defendants assign error to this finding, contending it is not supported by substantial evidence. We agree. The record reveals that disagreements relating to materials arose in June and were resolved by July 6. These negotiations did not affect the City's obligation to complete financing arrangements in order to award the contract by August 4, the expiration date of the 60-day time period.

First, defendants contend the court erred in determining that the notice of award was a valid acceptance of the bid proposal, an offer, and as such, created a contract. They argue that the notice set forth new conditions which constituted a material variance from its offer and, consequently, was a counteroffer it could properly reject. Defendants claim the notice was an attempt to (1) secure a bid award for holding purposes until financing arrangements with FHA were complete, and (2) make a tender of time extensions beyond the 60–day limit.

On the other hand, the City argues that a delay for FHA approval was an express condition contained in the original offer and call for bids and any reference in the notice to FHA approval was merely a reminder of that condition. The City contends that the extension of completion date was not mandatory or conditional, but wholly optional and for the benefit of defendants.

It is a fundamental rule that:

> An acceptance of an offer must always be identical with the terms of the offer or there is no meeting of the minds and no contract.

*Owens–Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co.,* 56 Wn.2d 167, 170, 351 P.2d 516 (1960); *Blue Mountain Constr. Co. v. Grant County School Dist. 150–204,* 49 Wn.2d 685, 688, 306 P.2d 209 (1957). An expression of assent and reply to an offer that purports to accept it, but changes the terms of the offer in any material respect, may be operative as a counteroffer; but it is not an acceptance and does not consummate the contract. *Blue Mountain Constr. Co. v. Grant County School Dist. 150–204, supra* at 688; *Anderson v. Shain,* 1 Wn. App. 469, 471–72, 462 P.2d 566 (1969).

> "Again, it is the rule that, where the contract is alleged to consist, as it is in this instance, of an offer on the one side and the acceptance of the offer on the other, the acceptance, to constitute a binding contract, must be as broad as the offer, any conditions attached to the offer

being in the nature of *new proposals* which themselves must be accepted to make a binding contract.

(Citations omitted. Italics ours.) *St. Paul & Tacoma Lumber Co. v. Fox,* 26 Wn.2d 109, 126, 173 P.2d 194 (1946), quoting from *Coleman v. St. Paul & Tacoma Lumber Co.,* 110 Wash. 259, 188 P. 532 (1920). *See also Koller v. Flerchinger,* 73 Wn.2d 857, 859, 441 P.2d 126 (1968); *Banks v. Crescent Lumber & Shingle Co.,* 61 Wn.2d 528, 530, 379 P.2d 203 (1963); *Ferris v. Blumhardt,* 48 Wn.2d 395, 293 P.2d 935 (1956); *Schuehle v. Schuehle,* 21 Wn.2d 609, 152 P.2d 608 (1944); 3 A. Corbin, *Contracts* § 689 (1960).

> "An acceptance, to be effectual, must be identical with the offer and *unconditional.* Where a person offers to do a definite thing, and another accepts conditionally or introduces a *new term* into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the offer *as to time of performance, place of performance, price, quantity, quality, and in other like cases.*" 13 C. J. 281.

(Italics ours.) *Martinson v. Carter,* 190 Wash. 502, 505, 68 P.2d 1027 (1937); and *St. Paul & Tacoma Lumber Co. v. Fox, supra* at 127.

However, we recognize that in order for an additional term expressed in the offer to change the purported acceptance into a counteroffer, the additional term must be a *material* modification. Further,

> if a "condition *added* by the intended acceptance can be implied in the original offer, then it does not constitute a material variance so as to make the acceptance ineffective."

*Johnson v. Star Iron & Steel Co.,* 9 Wn. App. 202, 205, 511 P.2d 1370 (1973); *Northwest Properties Agency, Inc. v. McGhee,* 1 Wn. App. 305, 462 P.2d 249 (1969).

Applying these rules to the present case, we find that (1) the notice of award purporting to accept Hughes' bid proposal changed the terms of the offer in a material respect, and (2) the new conditions were not *implied* in the

original offer. While it is true that the documents, *i.e.*, the original offer by the City, put all bidders on notice that FHA approval of the contract, change orders, and the like would be necessary because the construction project was to be funded in whole or in part by FHA, the original offer did not allow a delay in *awarding* of the contract past the 60–day time limit, *except in the event of a mutually agreed upon extension of time.* The notice explicitly stated that "because of need to obtain modification of building right–of–way permits", a delay may occur and Hughes "need not submit the necessary contract performance and payment bond and insurance until required by FHA or until FHA approves and accepts this award of contract. . . ." This language in the notice clearly indicates that the City was not in a position to make a valid award of the contract within the 60–day limit because the right–of–way permits were not yet in order. Although the evidence presented to the trial court showed that the necessary funding had been set aside or allocated by FHA, the delay caused by the failure to obtain the necessary right–of–way permits affected FHA's approval of the award. Hence, an additional delay as stated in the notice of award was in fact required to complete financing arrangements with FHA, the express reason for the 60–day interim between bid opening and award. The notice purported to meet the 60–day deadline; in fact it did not, because further delays were necessary to obtain the permits in order to complete financing arrangements.

■ The original offer to contract and Hughes' bid proposal contained the provision that after award, the construction contract would be executed *forthwith* and Hughes would need to submit a bond within 10 days from the date of the notice. The construction schedule was to begin "with the proposed date of signing the contract," according to section 11 of the notice and instructions to bidders. It becomes clear, when reading the provisions together, that the overall effect of the added language in the notice of award was to delay the construction schedule. Postponed

66

indefinitely was the commencement date of construction. Time of performance is a material term of a contract.

Consequently, an enforceable contract was not created, and Hughes' refusal to perform could not constitute a breach.

Defendants raise several other issues which are necessarily resolved or need not be reached in view of our disposition of this case.

The judgment of the Superior Court is reversed.

MUNSON, C.J., and McINTURFF, J., concur.

Reconsideration denied February 2, 1978.

Review denied by Supreme Court July 21, 1978.