IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

U.S. BANK NA, Successor Trustee to BANK OF AMERICA, NA, Successor in Interest to LASALLE BANK NA, as Trustee, on Behalf of the holders of the WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES, WMALT SERIES 2007-OA3,

Respondent/Cross-Appellant,

v.

KREG KENDALL, aka KREG L. KENDALL, aka KREG L. HARDING-KENDALL,

Appellant/Cross-Respondent,

QUALITY LOAN SERVICE CORP. OF WASHINGTON, a Washington Corporation,

Other Party,

NATIONAL CITY BANK; YAKIMA VALLEY CREDIT UNION; STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES; DOES 1-10 inclusive; UNKNOWN OCCUPANTS of the Subject Real Property; PARTIES in possession of the Subject Real Property; PARTIES claiming a right to possession of the Subject Real Property; ALL OTHER UNKNOWN PERSONS OR PARTIES claiming any right, title, estate, lien or interest in the Real Estate described in the complaint herein,

Defendants.

No. 77620-7-I
(consolidated with No. 77621-5, No. 77786-6, and No. 77820-0)

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 1, 2019

CHUN, J. — After several attempts at nonjudicial foreclosure by its trustee, Quality Loan Service Corporation of Washington (QLS), U.S. Bank filed a claim for judicial foreclosure against Kreg Kendall's house. Kendall filed counterclaims for declaratory judgment, breach of contract, intentional infliction of emotional distress (outrage[1]), and violation of the Consumer Protection Act (CPA) against U.S. Bank. He filed cross claims against QLS for outrage and violation of the CPA. The trial court dismissed on summary judgment all claims against QLS. We affirm that decision. We also affirm the order of judicial foreclosure against Kendall and dismissal of the outrage claim against U.S. Bank. However, we conclude Kendall's breach of contract and CPA claims against U.S. Bank fail as a matter of law, and reverse the trial court's decision to deny summary judgment on those claims.

## BACKGROUND

In 2004, Kendall, a real estate professional, purchased a home in Bellevue, Washington. He refinanced his home in 2006 with an adjustable rate note secured by a deed of trust on his property. Ultimately, U.S. Bank became the holder of the note with JP Morgan Chase as the loan servicer.[2]

---

[1] Intentional infliction of emotional distress and outrage are synonyms for the same tort. Kloepfel v. Bokor, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).

[2] The Deed of Trust listed Mortgage Electronic Registration Systems, Inc. (MERS) as the grantee and beneficiary and First Independent Mortgage Company as the lender. Kendall's loan was subsequently securitized and sold to the Washington Mutual Mortgage Pass-Through Certificates Series 2007-OA3 Trust (WaMU Trust) in September 2008. At that time, MERS assigned the Deed of Trust to LaSalle Bank as trustee for the WaMu Trust. WaMu was the loan servicer. LaSalle appointed QLS as successor trustee in September 2008. La Salle merged with Bank of America on October 17, 2008. U.S. Bank purchased Bank of America's mortgage backed transactions and succeeded Bank of America as the trustee on Kendall's loan in May 2009. JP Morgan Chase acquired WaMu's loan servicing rights and became the loan servicer.

Kendall stopped making payments on the loan in summer 2008. He entered into a loan modification agreement with JP Morgan Chase on February 9, 2009. He has not made a mortgage payment since March 2009.

Kendall filed for personal bankruptcy in September 2009 and received a discharge of his debts on January 14, 2010. On January 22, 2010, the bankruptcy court terminated the automatic bankruptcy stay, allowing U.S. Bank to pursue actions "necessary to obtain complete possession of the Property free and clear of claims of the bankruptcy estate."

To pursue nonjudicial foreclosure, U.S. Bank appointed QLS as the successor trustee in April 2010. QLS issued a notice of trustee sale on May 5, 2010 with a sale date of August 6, 2010. QLS did not hold the sale as scheduled, and issued a notice of discontinuation on October 18, 2010. U.S. Bank appointed QLS as successor trustee once more in August 2012.

Kendall attempted to arrange a short sale of the property. JP Morgan Chase, on behalf of U.S. Bank, agreed to a short sale in April 2013. Payment was placed in escrow with Stewart Title and Escrow. U.S. Bank did not accept this payment when tendered. The short sale was never completed.

On December 18, 2015, licensed escrow agent Kevin Pedersen of First American Title signed a Declaration of Payment on Kendall's behalf. The Declaration was notarized and subsequently recorded. The Declaration stated that payment was tendered to U.S. Bank on May 8, 2013 by Stewart Title and Escrow by certified check. However, First American Title subsequently filed an Affidavit of Wrongful Recording, stating that the "recordation of the Declaration of

Payment was improper and such recording of the Declaration of Payment . . . is void, null and of no legal effect." Pedersen provided a declaration attesting that he did not prepare the Declaration, was unaware it would be recorded, and was not authorized by his employer to sign it. Text messages appear to show Pedersen, Kendall's personal acquaintance, would not have signed the Declaration without permission from his supervisor had he known Kendall intended to record it.

QLS issued another notice of trustee sale on October 23, 2014, setting the sale date of February 20, 2015. The sale was discontinued on February 4, 2015. QLS issued yet another notice of trustee sale on November 19, 2015, setting the sale date of March 18, 2016. QLS did not hold the sale as scheduled, finally discontinuing it on June 2, 2016.

After these failed attempts at nonjudicial foreclosure, U.S. Bank filed for judicial foreclosure on October 3, 2016. Kendall counterclaimed against U.S. Bank, claiming violation of the CPA, outrage, and breach of contract. Kendall also requested declaratory relief that the loan ceased to exist after recording of the Declaration of Payment under RCW 61.24.110(3)(b). Additionally, Kendall raised cross claims of outrage and CPA violation against QLS.

U.S. Bank, QLS, and Kendall all filed motions for summary judgment. U.S. Bank and QLS sought dismissal of all claims brought by Kendall. U.S. Bank also sought a decree of foreclosure and dismissal of Kendall's request for declaratory judgment on the existence of the lien. Kendall requested dismissal of

4

the foreclosure action.

The trial court granted QLS's motions, dismissing all claims against it with prejudice. The trial court granted U.S. Bank's motion to dismiss Kendall's claim for outrage, but denied its motion for decree of foreclosure and its motions to dismiss the CPA and breach of contract claims. The trial court also denied Kendall's motion for summary judgment.

U.S. Bank and Kendall filed motions for reconsideration. On reconsideration, the trial court granted U.S. Bank's motion in part, granting a decree of judicial foreclosure and dismissing Kendall's claim for declaratory judgment on the existence of his lien. However, the trial court denied reconsideration of its rulings on the CPA and breach of contract claims. The trial court denied Kendall's motion for reconsideration.

U.S. Bank and Kendall jointly moved for entry of judgment under CR 54(b) and certification for review under RAP 2.3(b)(4). The trial court granted the motion and stayed the proceedings pending appeal.

U.S. Bank and Kendall both filed motions for discretionary review, which a commissioner of this court granted.

## DISCUSSION

### A. Standard of Review

We review de novo orders on motions for summary judgment and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled

to a judgment as a matter of law. <u>Owen</u>, 153 Wn.2d at 787; CR 56(c). "The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if reasonable persons could reach but one conclusion." <u>GO2Net, Inc. v. C I Host, Inc.</u>, 115 Wn. App. 73, 83, 60 P.3d 1245 (2003).

B. <u>Judicial Foreclosure Issues</u>

On reconsideration, the trial court granted U.S. Bank's motion for summary judgment seeking a decree of judicial foreclosure. The trial court determined the lien existed and U.S. Bank's motion was not time barred because Kendall's acknowledgement of the lien restarted the statute of limitations. Kendall appeals these conclusions and the decree of judicial foreclosure. U.S. Bank appeals the trial court's determination that the nonjudicial foreclosure proceedings did not toll the statute of limitations.

1. Existence of the Lien

The trial court granted U.S. Bank's motion for summary judgment on Kendall's counterclaim for declaratory judgment that the lien no longer existed. The trial court stated "there is no way under the facts that the Declaration of Payments could be deemed valid." Kendall claims the court erred because he recorded a Declaration of Payment in accordance with RCW 61.24.110(3), which extinguished the lien. U.S. Bank argues the Declaration of Payment did not conform to the statutory requirements and was subsequently voided by the

6

affidavit of wrongful recording. We agree with U.S. Bank regarding the lack of conformity.

> The deed of trust act (DTA) provides:
>
> If the trustee of record is unable or unwilling to reconvey the deed of trust within one hundred twenty days following payment to the beneficiary as prescribed in the beneficiary's demand statement, a title insurance company or title insurance agent . . . may record with each county auditor where the original deed of trust was recorded a notarized declaration of payment.

RCW 61.24.110(3)(a). The beneficiary or trustee of record has 60 days from the date of recording to object to the notarized declaration of payment.

RCW 61.24.110(3)(b). Absent a timely objection, "any lien of the deed of trust against the real property encumbered must cease to exist."

RCW 61.24.110(3)(b).

First American Title recorded a notarized Declaration of Payment on behalf of Kendall on December 22, 2015. The Declaration stated that payment was tendered to U.S. Bank on May 8, 2013 by Stewart Title and Escrow by certified check. Licensed escrow agent Kevin Pedersen signed the Declaration. Sixty days elapsed without objection from the beneficiary or trustee. Ordinarily, under RCW 61.24.110(3)(b), this would extinguish the lien.

However, in this case, Kendall failed to comply with the prerequisite for a declaration of payment. Specifically, the statute allows for recording of a declaration of payment if the trustee fails to reconvey the deed of trust "following payment to the beneficiary as prescribed in the beneficiary's demand statement." RCW 61.24.110(3)(a). But U.S. Bank never received payment as demanded.

7

In April 2013, JP Morgan Chase notified Kendall it had approved his short sale request. The notice specified completion of certain paperwork and certified funds paid by wire transfer or overnight mail by May 15, 2013, or the offer became null and void. Instead of acting in accordance with these terms, Kendall placed the funds in escrow with Stewart Title and Escrow and requested U.S. Bank provide the promissory note to prove its status as holder of the note. U.S. Bank did not accept the funds or accede to the request for the promissory note. Therefore, Kendall did not comply with the beneficiary's demands and U.S. Bank did not receive payment in satisfaction of the Note. The Declaration was improperly filed without completion of the statutory requirements.

Based on the evidence, as a matter of law, the Declaration was prepared and filed without compliance with the statutory prerequisites. Therefore, the trial court did not err in concluding that the Declaration was invalid and dismissing Kendall's counterclaim for declaratory judgment that the lien was extinguished.

2. Statute of Limitations

Kendall contends U.S. Bank's claim for judicial foreclosure is time barred. U.S. Bank argues the action was timely because the nonjudicial foreclosures tolled the limitations period, and the short sale agreement served as an acknowledgement of the debt that restarted the period. Under either theory, U.S. Bank's action was timely.

As written contracts, a promissory note and deed of trust are subject to the six-year statute of limitations under RCW 4.16.040(1). Cedar W. Owners Ass'n v. Nationstar Mortg., LLC, 7 Wn.App.2d 473, 482, 434 P.3d 554, 559 (2019). An

action on the promissory note and deed of trust must commence within six years of "'when the party is entitled to enforce the obligations of the note.'" Cedar W., 7 Wn.App.2d at 484 (quoting Wash. Fed., Nat'l Ass'n v. Azure Chelan LLC, 195 Wn. App. 644, 663, 382 P.3d 20 (2016)). For installment promissory notes, the six-year limitations period accrues for each monthly installment from the time it becomes due. Cedar W., 7 Wn.App.2d at 484. In the event of bankruptcy, the lien of a deed of trust is not discharged and remains enforceable. Edmundson v. Bank of Am., NA, 194 Wn. App. 920, 922, 378 P.3d 272 (2016). However, the payments are no longer due as of the discharge, and the limitations period accrues and begins to run when the last payment was due. Edmundson, 194 Wn. App. at 931.

### a. Tolling

The trial court found the failed nonjudicial foreclosure proceedings did not toll the limitations period. U.S. Bank appeals this issue, arguing case law establishes that nonjudicial foreclosure proceedings toll the six-year limitations period. U.S. Bank is correct.

Here, the bankruptcy court discharged Kendall's personal liability on January 14, 2010. His last payment on the lien therefore would have due January 1, 2010. The parties do not dispute that the limitations period began running as of that date. See Edmundson, 194 Wn. App. at 931. As a result, the six-year statute of limitations would have run as of January 1, 2016. Because U.S. Bank filed for judicial foreclosure on October 3, 2016, the claim is time barred unless tolling applies.

9

Case law clearly states that commencement of nonjudicial foreclosure proceedings tolls the six-year limitations period. Bingham v. Lechner, 111 Wn. App. 118, 127, 45 P.3d 562 (2002) ("commencement of a nonjudicial foreclosure tolls the statute of limitations").[3] "When the nonjudicial foreclosure action tolls the statute of limitations is a factual inquiry." Cedar W., 7 Wn.App.2d at 488. Generally, the notice of trustee sale tolls the limitations period until the date scheduled for the foreclosure or 120 days later, the last day to which it could have been continued. Bingham, 111 Wn. App. at 131; Cedar W., 7 Wn.App.2d at 488.

QLS commenced and abandoned three separate nonjudicial foreclosure proceedings on behalf of U.S. Bank. For the first sale, QLS issued a notice of trustee sale on May 5, 2010, setting a sale date of August 6, 2010, and discontinuing the sale on October 18, 2010, resulting in a tolling period of 166 days. The second notice of trustee sale issued October 23, 2014 with a sale date of February 20, 2015, and discontinuation on February 5, 2015, amounting to 106 days tolled. The final notice of trustee sale occurred on November 19, 2015, with a sale date of March 18, 2016 and discontinuation on June 2, 2016, yielding 196 days tolled. Altogether, the nonjudicial foreclosure proceedings tolled the statute of limitations for 468 days, bringing U.S. Bank's filing date well

---

[3] A recent unpublished case from this court noted that incomplete nonjudicial foreclosure proceedings tolled the statute of limitations. See Erickson v. Am.'s Wholesale Lender, No. 77742-4-I, slip op. at 8 (Wash. Ct. App. Apr. 16, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/777424.PDF. Moreover, multiple nonjudicial foreclosure proceedings cumulatively toll the limitations period. Erickson, No. 77742-4-I, slip op. at 8. While not binding, this decision holds persuasive value based on its similarity to the facts at hand. See GR 14.1(c).

within the required time period. Therefore, U.S. Bank's complaint for judicial foreclosure was timely.

The trial court erred in its determination that the limitations period was not tolled in this case. Despite this error, the trial court correctly found that U.S. Bank timely filed its claim for judicial foreclosure based on Kendall's acknowledgment of the debt restarting the statute of limitations.

b. Acknowledgement

The trial court found U.S. Bank's foreclosure action timely because Kendall acknowledged the debt and restarted the statute of limitations by initialing the short sale agreement in April 2013. It stated, "The Defendant acknowledged that the note was secured by the property when he entered into an agreement to short sell the property. The short sale agreement is clear that it does not seek to establish personal liability upon the Defendant, but rather secure the payment on the note through the sale of the property." Kendall claims the letter did not constitute an acknowledgement and that any acknowledgment is void under federal bankruptcy law. U.S. Bank argues that federal bankruptcy law does not bar an in rem action on the property and that the short sale letter meets the requirement for an acknowledgment before the statute of the limitations has run. We agree with U.S. Bank.

i. Federal Law

Kendall contends that federal bankruptcy law governs any

acknowledgement and has very specific requirements under 11 U.S.C. § 524(c)[4]

after bankruptcy discharge. AOB 32-35. However, these requirements apply to

agreements as to dischargeable debt. 11 U.S.C. § 524(c). 11 U.S.C. § 524(a)

enjoins a secured creditor from attempting to collect or enforce the debt, but

allows the creditor to foreclose on the collateral. In re Cortez, 191 B.R. 174, 178

(B.A.P. 9th Cir. 1995). "In the case of a surviving lien, a bankruptcy discharge

'extinguishes only one mode of enforcing a claim—namely, an action against the

---

[4] (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if--

    (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

    (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

    (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--

        (A) such agreement represents a fully informed and voluntary agreement by the debtor;

        (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

        (C) the attorney fully advised the debtor of the legal effect and consequences of--

            (i) an agreement of the kind specified in this subsection; and

            (ii) any default under such an agreement;

    (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

    (5) the provisions of subsection (d) of this section have been complied with; and

    (6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

        (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

        (ii) in the best interest of the debtor.

    (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C. § 524(c).

debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.'" In re Cortez, 191 B.R. at 178 (quoting Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991)).

U.S. Bank's claim for judicial foreclosure was not an action against Kendall for personal liability on the debt. Instead, U.S. Bank properly pursued the surviving *in rem* claim against the property itself. The protection in 11 U.S.C. § 524(c) only pertains to an "agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title." Because the *in rem* claim against the property survived Kendall's personal bankruptcy, the protections do not apply to the judicial foreclosure action. Therefore, federal bankruptcy law does not invalidate any acknowledgment of the debt attached to the property rather than Kendall personally.

> ii.  Short Sale Letter Acknowledgment

Kendall also claims the short sale letter does not amount to an acknowledgement of the debt under Washington law. "An acknowledgment or promise within the meaning of RCW 4.16.280[5] restarts the statute of limitations." Jewell v. Long, 74 Wn. App. 854, 856, 876 P.2d 473 (1994). Restarting the limitations period in this manner requires "written acknowledgment or promise signed by the debtor that recognizes the debt's existence, is communicated to the creditor, and does not indicate an intent not to pay." In re Receivership of

---

[5] "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless it is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." RCW 4.16.280.

Tragopan Props., LLC, 164 Wn. App. 268, 273, 263 P.3d 613 (2011). The requirements differ between acknowledgments made before and after the limitations period has run. Tragopan, 164 Wn. App. at 273. Before the period has run, the "legal action must be upon the original debt or upon the paper evidencing it," and "any acknowledgment of the debt should necessarily infer an agreement to pay it, unless something in the acknowledgment leads to a contrary conclusion." Tragopan, 164 Wn. App. at 273-74. In contrast, an acknowledgment after the limitations period requires a new agreement and courts should construe it more strictly. Tragopan, 164 Wn. App. at 274.

Here, Kendall initialed the short sale letter in April 2013, well within the six-year limitations period, which commenced January 1, 2010. Therefore, any acknowledgment of the debt leads to an inference of intent to pay, unless something in the acknowledgment demonstrates otherwise. Tragopan, 164 Wn. App. at 273.

The short sale letter provides: "we have agreed to your request to sell your home for less than you owe. . . . We will accept a minimum of $623,634.29 to release the JP Morgan Chase mortgage lien and waive any deficiency." The document further states,

> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

Kendall initialed the document, signaling his approval.

14

This letter and Kendall's signature reaffirmed the existence of the lien on Kendall's property. The document notes Kendall's request for the short sale evidencing an intent to pay. Finally, the disclaimer clearly shows that JP Morgan Chase did not intend to revive or collect on a personal liability, eliminating the need for compliance with the requirements for acknowledgement in 11 U.S.C. § 524(c). Therefore, the short sale letter constitutes an acknowledgement under the more lenient rules for acknowledgments prior to the running of the limitations period. This restarted the period on April 11, 2013.

Under both the theories of tolling and acknowledgment, as a matter of law, U.S. Bank's timely filed its foreclosure action. During the hearing on motions for summary judgment, U.S. Bank presented the note, thereby proving itself the actual holder of the note. RP 24, 48. The holder of the note is entitled to enforce it. Deutsche Bank Nat'l Tr. Co. v. Slotke, 192 Wn. App. 166, 174, 367 P.3d 600 (2016). As a result, the trial court properly entered an order of judicial foreclosure for U.S. Bank.

C. CPA Claims

Kendall filed CPA claims based on the DTA against QLS and U.S. Bank. The trial court dismissed the CPA claim against QLS but denied U.S. Bank's motion for summary judgment on the claim. U.S. Bank appeals this decision, and Kendall appeals the decision as to QLS.[6] After examining the record, we

---

[6] The parties do not dispute that the statute of limitations bars any tort claim against U.S. Bank and QLS for their activities prior to March 8, 2013.

conclude Kendall has not present sufficient evidence of compensable injury to sustain a CPA claim against either QLS or U.S. Bank.

A CPA claim based on violations of the DTA must meet the same requirements as any other claim under the CPA. Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 785, 336 P.3d 1142 (2014). "The plaintiff must show [an] '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in [their] business or property; (5) causation.'" Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 115, 285 P.3d 34 (2012) (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). A plaintiff must establish all five elements. Bavand v. OneWest Bank, 196 Wn. App. 813, 840, 385 P.3d 233 (2016). The CPA requires "a causal link" between the unfair or deceptive act and the injury suffered. Hangman Ridge, 105 Wn.2d at 785. The claimant must establish he or she would not have suffered an injury but for the other party's unfair or deceptive practices. Bavand, 196 Wn. App. at 842.

The trial court denied summary judgment on the CPA claim against U.S. Bank. However, Kendall's CPA claim against U.S. Bank fails as a matter of law because he does not provide evidence of compensable injury.

The CPA requires injury to business or property. Frias v. Asset Foreclosure Serv., Inc., 181 Wn.2d 412, 430, 334 P.3d 529 (2014). "[B]usiness or property injuries might be caused when a lender or trustee engages in an unfair or deceptive practice in the nonjudicial foreclosure context." Frias, 181 Wn.2d at 431. An injury under the CPA does not require quantifiable monetary

16

loss. Frias, 181 Wn.2d at 431. "Where a business demands payment not lawfully due, the consumer can claim injury for expenses [they] incurred in responding, even if the consumer did not remit the payment demanded." Frias, 181 Wn.2d at 431. But mental distress, embarrassment, inconvenience, and the "associated physical symptoms are not compensable under the CPA." Frias, 181 Wn.2d at 432. Furthermore, "the financial consequences of such personal injuries are also excluded." Frias, 181 Wn.2d at 431.

Here, Kendall claims the actions taken by U.S. Bank and QLS "have caused me extreme distress over the last 9 years," including "anxiety, sleeplessness and other physical symptoms." But as noted above, the CPA does not compensate for such injuries. See Frias, 181 Wn.2d at 432.

According to Kendall, "due to the constant stress, stigmatization and time spent defending against these wrongly brought proceedings, [his] income plummeted from 2008 through 2015." To prove these damages, Kendall provided a letter from the owner of his real estate office describing Kendall's loss of income during this time period. The letter provides, "What I witnessed can be most easily described as an intense distraction coupled with loss in confidence and positive attitude." The letter also described the publicity that stems from foreclosure proceedings and its negative impact on a real estate agent involved in personal foreclosures. Accordingly, "it's taken a heavy toll on him financially and personally." But again, the CPA does not compensate for the financial consequences of mental distress, embarrassment, inconvenience, and associated physical symptoms. See Frias, 181 Wn.2d at 431. And Kendall does

17

not provide legal authority to support his damages theory that the alleged CPA violation caused him stigmatization and time loss, which in turn, he claims, affected his income.[7]

Because the record lacks evidence of compensable injury to property or business, Kendall cannot establish the injury element of the CPA. As a result, summary judgment and dismissal was appropriate for the claims against both QLS and U.S. Bank.

### D. Outrage

Kendall claims the trial court erred by granting summary judgment to both QLS and U.S. Bank on his outrage claims. We conclude the trial court properly granted summary judgment on these claims.

A claim for outrage requires proof of three elements: "'(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" Trujillo v. NW. Tr. Servs. Inc., 183 Wn.2d 820, 840, 355 P.3d 1100 (2015) (quoting Kloepfel v. Bokor, 149 Wn.2d 192, 195, 66 P.3d 630 (2003)). A plaintiff must demonstrate outrageous conduct so extreme as to go beyond all possible bounds of decency. Kloepfel, 149 Wn.2d at 196. Mere insults, indignities, and annoyances do not rise to the level of outrageousness required for outrage. Kloepfel, 149 Wn.2d at 196.

---

[7] Nor does Kendall provide evidence—apart from conclusory statements—establishing a causal link to such injuries. "Mere allegations or conclusory statements of facts unsupported by evidence do not sufficiently establish such a genuine issue." Discover Bank v. Bridges, 154 Wn. App. 722, 727, 226 P.3d 191 (2010).

Kendall defaulted on his loan in 2009 and failed to make any subsequent payments. In light of his long history of default, efforts to foreclose on the property were more logical rather than so extreme as to go beyond all possible bounds of decency. Because Kendall does not establish an issue of fact regarding the level of outrageous conduct required, the trial court properly granted summary judgment and dismissed both outrage claims.

E. Breach of Contract

Kendall claimed U.S. Bank breached their contract for the 2013 short sale of his home. The trial court denied U.S. Bank's motion for summary judgment on this claim, finding questions of material fact remained. It stated, "Viewing all the facts in the light most favorable to the nonmoving party, there is an argument that can be made that Mr. Kendall attempted to comply with the conditions of the short sale and that it was U.S. Bank's behavior that did not allow for that to be completed." U.S. Bank argues the parties never entered into an enforceable contract, entitling it to summary judgment as a matter of law. We agree.

"Contract formation requires an objective manifestation of mutual assent." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 207, 289 P.3d 638 (2012). An identical offer and acceptance is necessary for a meeting of the minds and a resulting contract. Sea-Van Inv. Assoc. v. Hamilton, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994). Under traditional contract principles, the offeror is the master of the offer. Discover Bank v. Ray, 139 Wn. App. 723, 727, 162 P.3d 1131 (2007). The offeror may propose acceptance by conduct, and the buyer may accept by performing those acts as proposed. Discover Bank, 139 Wn. App. at

727. "Generally, a purported acceptance which changes the terms of the offer in any material respect operates only as a counteroffer, and does not consummate the contract." Sea-Van Inv., 125 Wn.2d at 126. Mutual assent is normally a question of fact, but "may be determined as a matter of law if reasonable minds could not differ." P.E. Sys., 176 Wn.2d at 207.

In April 2013, JP Morgan Chase sent Kendall a document entitled, "Terms and conditions to sell your home for less than you owe." It outlined the requirements for Kendall to complete the short sale of his house and release the lien. Specifically, the document provided, "The full amount must be received in the form of certified funds no later than 05/15/2013, or this offer becomes null and void." It further directed, "To accept this offer, please send payment by wire transfer or overnight mail to the address provided below." This document established the offer and means of acceptance for Kendall to release the lien.

The record shows that Kendall did not wire transfer or overnight mail certified funds by May 15, 2013, choosing instead to deposit the funds into an escrow account with Stewart Title and Escrow. As a result, Kendall did not perform the acts required for acceptance of the contract. Because Kendall did not comply with the means of acceptance established by the offeror, the parties did not arrive at a meeting of the minds and did not form a contract. At most, Kendall's actions constituted a counteroffer, which JP Morgan Chase did not accept. Additionally, the terms of the original offer by JP Morgan Chase expired on May 15, 2013, after Kendall failed to accept as specified.

As master of the offer, JP Morgan Chase established the means of acceptance and Kendall failed to perform as specified. While the trial court determined that evidence demonstrated Kendall attempted to comply with the terms of the offer, leaving issues of fact for resolution, the record shows as a matter of law that the parties never demonstrated the legally required meeting of the minds and mutual assent to form a contract. Therefore, U.S. Bank is entitled to summary judgment on Kendall's breach of contract claim.

F. Attorney Fees

The terms of the Deed of Trust allow for payment of attorney fees. "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." Under RCW 4.84.330, the terms of this provision apply to the "prevailing party, whether or not [they are] the party specified in the contract." The prevailing party means "the party in whose favor final judgment is rendered." RCW 4.84.330. As the prevailing party on all issues, U.S. Bank is awarded fees and costs on appeal, subject to its compliance with RAP 18.1.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Chun, J.

WE CONCUR: